# EXHIBIT N

DRAFT

## MANAGEMENT SERVICES AGREEMENT

This Management Services Agreement ("Agreement" or "Management Agreement") is dated as of _____, 2011 by and between the Hospital Authority of Albany-Dougherty County, Georgia, a hospital authority organized and existing pursuant to O.C.G.A. §§ 31-7-70 *et seq.* ("Authority") and Phoebe North, Inc., a Georgia nonprofit corporation, ("Manager").

**WITNESSETH:**

**WHEREAS**, Authority is acquiring substantially all of the assets used exclusively in the operation of Palmyra Medical Center, [**address**] (the "Hospital") and the other assets used in the support of the Hospital and the Authority will assume certain liabilities relating to the Hospital pursuant to the terms of a certain Asset Purchase Agreement under date of December 21, 2010;

**WHEREAS**, Phoebe Putney Health System, Inc., ("PPHS") has formed Manager as its affiliate corporation and Manager will employ, effective March 1, 2011, substantially all employees employed in the operation of Hospital; and

**WHEREAS**, Authority desires to engage Manager to manage the day-to-day operations of Hospital, to provide all employees necessary to operate Hospital and deliver non-physician patient care to patients of Hospital and to provide all services necessary for the operation of Hospital.

**NOW, THEREFORE**, in consideration of the mutual benefits accruing to the parties hereto, the mutual covenants and agreements herein and other valuable consideration, the adequacy of which the parties hereto acknowledge, the parties hereto agree as follows:

**DEFINITIONS**

"Administrative Managers" shall have the meaning set forth in Section in 3.01(a).

"Administrative Manager Reimbursement" shall have the meaning set forth in Section 3.01(a) hereof.

"Asset Purchase Agreement" shall mean the agreement entered into on December 21, 2010, by and among Authority, PPHS, Manager, and Palmyra Park Hospital, Inc.

"Authority" shall have the meaning set forth in the Preamble.

"Authority Accounts" shall have the meaning set forth in Section 5.01(a).

"Consultants" shall have the meaning set forth in Section 3.02.

"CPAs shall have the meaning set forth in Section 3.04(a).

Highly Confidential

"Employee Compensation" shall have the meaning set forth in Section 3.01(a) hereof.

"GAAP" means United States generally accepted accounting principles and practices as in effect from time to time applied consistently by Manager in connection with the Hospital throughout the periods involved.

"Governmental Entity" means any government or any agency, bureau, board, directorate, commission, court, department, official, political subdivision, tribunal or other instrumentality of any government, whether federal, state or local, domestic or foreign.

"Hospital Authorities Law" means the Hospital Authorities Law, O.C.G.A. §§ 31-7-70 *et seq.*

"HIPAA" has the meaning set forth in Section 3.13 (f).

"Law" means any constitutional provision, statute, ordinance or other law, rule, regulation, interpretation, judgment, decree or order of any Governmental Entity or any settlement agreement or compliance agreement with any Governmental Entity.

"Manager" has the meaning set forth in the Preamble.

"Operating Period" shall have the meaning set forth in Section 1.01.

"TJC" has the meaning set forth in Section 4.04.

## 1.   TERM

**1.01   Term.**   This Agreement shall be effective from 12:01 a.m. on March 1, 2011 ("Effective Date") until 11:59 a.m. January 31, 2013, unless terminated earlier pursuant to Section 7.03 hereof (the "Operating Period").

## 2.   GENERAL RESPONSIBILITIES OF PARTIES

**2.01   Appointment and Fiduciary Duty**.   Authority hereby appoints Manager as the sole and exclusive manager of the day-to-day operations of Hospital during the Operating Period, subject to Authority's control described in Section 2.02 and as required by law.  Manager hereby accepts such appointment and shall have authority for the day-to-day operations of Hospital, subject to this Agreement.  Manager acknowledges that it shall have a fiduciary responsibility to Authority with regard to the performance of Manager's responsibilities under this Agreement.

**2.02   General Control of Authority**.   Authority shall at all times during the Operating Period have ultimate control over the assets and operations of the Hospital.  Manager shall perform its duties as described in this Agreement pursuant to policies, procedures, rules and directives, adopted and amended from time to time, by Authority and in accordance with all applicable Laws.

2

**EXHIBIT N - 2**

**2.03   Medical and Professional Matters**.  All matters relating to the care and treatment of patients requiring professional medical judgment shall remain the responsibility of the Hospital's Medical Staff, and Manager shall not be responsible for nor have any right to make medical judgments regarding the delivery of medical care by physicians or allied health professionals. However, the Manager and the Medical Staff shall consult with each other regarding such matters where consultation is feasible and in the best interest of the patients of the Hospital.  Authority hereby delegates control and authority for overseeing Medical Staff affairs, including monitoring the performance of professional services by the Medical Staff and other licensed personnel to ensure that Hospital maintains high standards of patient care, treatment and related functions to Manager.  Authority may at any time revoke Manager's control and authority for overseeing Medical Staff affairs, appointments and actions.  The foregoing notwithstanding, the Authority retains control and authority over all appointments to Hospital's Medical staff, the granting of clinical privileges at the Hospital, and any actions taken with respect to Medical Staff members, including appeals of actions taken.

**3.   DUTIES OF MANAGER**

**3.01   Personnel**

(a)   Manager shall provide or arrange for the provision of all employees necessary for the day-today operation of the Hospital together with certain administrators designated by Manager (the persons identified in such written documents are referred to herein as the "Administrative Managers") necessary for the management of the Hospital.  The Administrative Managers as of the Effective Date of this Agreement are listed in Schedule A attached hereto. Any Administrative Manager may be changed from time to time in the sole discretion of Manager.  All employees necessary for the day-to-day operation of the Hospital together with the Administrative Managers shall be employees of Manager.  Manager shall inform Authority of all compensation and related expenses related to all employees provided by  Manager for the day-to-day operation of the Hospital ("Employee Compensation") together with  all compensation and related expenses incurred or paid by Manager to or on behalf of the Administrative Managers (the "Administrative Manager Reimbursement").  For purposes of this Section 3.01, both Administrative Manager Reimbursement and Employee Compensation shall be inclusive of salary, fringe benefits, bonuses, severance benefits and approved reimbursable business expenses paid to the Administrative Managers or employees.  "Fringe benefits" shall include the employer's contribution to F.I.C.A., unemployment compensation and other employment taxes, workmen's compensation, group life, accident and health insurance premiums, disability coverage insurance premiums, retirement matching, car allowance and any other benefits.  Manager shall reasonably allocate Administrative Manager Reimbursement among Hospital and other entities Administrative Managers manage for Manager, PPHS or other affiliates of PPHS.

(b)   Manager shall have sole responsibility for supervising all personnel at the Hospital, and, except as otherwise provided by this Agreement, shall be entitled to take such actions with respect to such personnel as Manager, in its sole discretion, believes are necessary to manage Hospital in accordance with this Agreement.  Manager shall have complete authority as to its employees and the Administrative Managers, including but not limited to the following:

3

CONFIDENTIAL                                                PP-HC-00002952

**EXHIBIT N - 3**                                       PX0009-003

(i)     Determining such personnel's wages, benefits and other terms and conditions of employment, including reasonable severance agreements;

(ii)     Supervising all such personnel, including responsibility for all hiring, counseling, disciplinary and termination decisions; and

(iii)     After consulting with and obtaining the approval of Authority with regard to all actions relating to labor organizations, including but not limited to recognition of such organizations and the negotiation, settlement, execution and administration of any labor agreements, to the extent permitted by the terms of such agreements and by the Authority.

3.02   **Consultants**.  Manager may hire or retain any consultants, accountants, attorneys or other professional personnel (the "Consultants") which Manager, in its sole discretion, determines are necessary or appropriate to assist Manager in carrying out its duties and responsibilities in accordance with this Agreement; provided however should the total cost to hire or retain any Consultant exceed $10,000, Manager shall obtain Authority's prior approval of such hire or retention..

3.03   **Management**

(a)     Manager shall supervise and manage all purchasing, billings, collections, payables, data processing, accounting, cost reporting and other financial matters related to the day-to-day operation of Hospital.  Manager shall supervise and manage the business affairs of Hospital to ensure that funds are collected and expended for and on behalf of Authority and in accordance with the terms of this Agreement.  Manager shall ensure that the Hospital bond payments are made in a full and in a timely manner to ensure that the bonds do not go into default assuming sufficient funds exist to make such payments.  Manager shall notify Authority if insufficient funds exist.  Manager shall also comply with all covenants of the bonds issued to support the operations and facilities of the Hospital.

(b)     Manager, acting in Authority's name and as agent for Authority, shall make or direct to be made timely deposits in a bank account that is separate and apart from all other funds and accounts of Authority all receipts and moneys arising from the operation of Hospital in accordance with Section 5.01 of this Agreement, and shall make disbursements from such accounts on behalf of Authority in such amounts and at such times as the same are required.  Signatories and approvals as to the amounts on all checks shall be in accordance with the duly adopted policies and procedures of Authority.

(c)     Manager shall be responsible for the performance of all acts reasonably necessary or required in connection with the operation of the Hospital in accordance with Authority's directions.

(d)     Manager shall be responsible for the negotiation and preparation of service and all other contracts determined by Manager in its sole discretion to be necessary or desirable in connection with the operation of Hospital in the usual course of business, including the execution of all physician agreements, medical director agreements, joint venture agreements and provider

4

agreements necessary and appropriate to operate Hospital.  All such service contracts shall be in compliance with Internal Revenue Service Revenue Procedure 97-13 or similar procedures or Law

(e)     Manager acknowledges that Authority is a Georgia hospital authority organized and operating under the Hospital Authorities Law with, inter alia, a charitable mission and it has under the Hospital Authorities Law certain responsibilities and obligations, including but not limited to, obligations to provide charity care and indigent care. At all times, Manager in managing Hospital shall follow the charity and indigent care policies of Authority and shall assist Authority in meeting all of Authority's required obligations under the Hospital Authorities Law.

(f)     Manager shall not engage in any financial lending, financing or banking actions that result in a liens, mortgages, lines of credit, security interest or financial obligations in the name of the Hospital without the prior written consent of the Authority.  Prior to requesting consent for approval, Manager shall provide a detailed proposal to Authority describing as a minimum the amount of required funding, the purpose of the financing, the strategic plan to generate sufficient revenue to repay such financing and all other alternatives evaluated to obtain sufficient funding.

### 3.04   Financial Reports, Books and Records.

(a)     Manager shall retain, on behalf of Authority, a firm of independent certified public accountants (the "CPAs") approved by the Authority.

(b)     Manager shall prepare or cause to be prepared for Authority the following financial statements:

(i)     Within ninety (90) days following the close of Hospital's fiscal year, audited annual financial statements for the Hospital for that fiscal year prepared by the CPAs in accordance with GAAP, which statement shall include a balance sheet, a statement of operations and changes in net assets and a statement of cash flow; and

(ii)     Unaudited monthly financial statements including a balance sheet, a statement of operations and changes in net assets and a statement of cash flow.

(c)     Manager shall compile, on a monthly basis, a report which highlights the different cost and revenue centers of Hospital.

(d)     Pursuant to and in compliance with Section 952 of the Omnibus Reconciliation Act of 1980 (PL96-499) to the extent it applies to Authority, Manager covenants to maintain, or cause the maintenance of for a period of at least four (4) years after the rendering of any management services, all books, documents and records of Manager as the same pertain to Manager's actual cost of providing the services contemplated herein and, additionally, to make said documents available to the Secretary of the United States Department of Health and Human Services, the Comptroller General of the United States Government, or any of their duly authorized representatives upon written request from said officials or their designees.

5

(e)     Manager shall keep all books, accounts and records maintained for the operation of the Hospital open at all reasonable hours and upon appropriate notice for inspection and audit by Authority or any accountants selected by Authority for that purpose.

(f)     Manager shall cause the preparation and filing of all State and Federal cost reports necessary for reimbursement of Authority. Manager shall report to Authority at the end of each fiscal year quarter in reasonable detail on Hospital's participation in Medicare and Medicaid programs.

(g)     Manager shall create, implement and review annual budgets (capital and operating) for the Hospital, which shall be approved annually by Authority and then take all actions determined by Manager in its sole discretion to be necessary to implement such budgets.

(h)     Within ninety (90) days following the close of Hospital's fiscal year, Manager shall cause to be prepared for Authority's review and approval the Community Benefit Report required by the Hospital Authorities Law and upon approval by the Authority cause same to be filed with the Clerk of the Dougherty Superior Court.

**3.05     Contracts**.  Subject to Section 3.03 (e) above, Manager may enter into, modify, discharge, make any settlements with respect to or terminate contracts, leases or other documents in the name of Manager or Authority with vendors, physicians or any other persons or entities as may be necessary and appropriate to manage and operate the Hospital pursuant to this Agreement; provided however, if the contract obligates Authority in the amount of $10,000.00 or more, Manager shall obtain prior approval from a designee of the Authority before obligating the Authority.  Manager shall make available to Hospital for the benefit of Authority all those services Manager has contracted specifically for Hospital under the terms any contract it enters into in its own name for the term of this Agreement. In the event of a termination of this Agreement which results in no further relationship between the Authority and Manager, Manager shall cause any contracts it has entered into in its own name to manage and operate the Hospital pursuant to this Agreement for the benefit of Authority to be assigned to Authority. Manager shall perform its obligations and responsibilities under the Asset Purchase Agreement and shall assist Authority in performing its obligations and responsibilities under the Asset Purchase Agreement.

**3.06     Litigation**.  Subject to any rights of indemnity which the parties may have under this Agreement, Manager may, in its sole discretion, defend, assert, settle or otherwise dispose of any claims, litigation, judgments or liabilities in connection with the operations of the Hospital during the Operating Period, provided any settlement that impacts Hospital's participation in any state or federal healthcare program shall be subject to the approval and involvement of the Authority.

**3.07     Manager Liability**.  Manager shall cause to be maintained policies of insurance or self-insurance as are, in its opinion, appropriate to insure Authority, Manager and Manager's employees and agents against any liability resulting from Manager or Manager's employees' acts or omissions during the Operating Period.  Insurance shall include general liability, professional liability, premises liability and Directors and Officers insurance.

6

**3.08**   **Repairs and Maintenance**.   Manager shall, in the name of and for the account of Authority, as determined by Manager in its sole discretion to be appropriate, negotiate, contract for and supervise the repair and maintenance of the physical property and equipment of the Hospital as shall be necessary to keep and maintain Hospital in good working order and condition.

**3.09**   **Government Regulations**.   On behalf of Authority, Manager shall use its best efforts and all due diligence to ensure that (a) Authority continuously complies with all applicable Laws, including without limitation the state and federal False Claims Act, Civil Monetary Penalty Law, state and federal Anti-Kickback statutes, state and federal self referral prohibitions and applicable Medicare conditions of coverage and/or participation, including ensuring that none of Manager's employees have been sanctioned, debarred or suspended by the Medicare or Medicaid program and (b) Authority retains and maintains in good standing all necessary accreditations, licenses, permits, approvals and authorizations required for the ongoing operation of the Hospital.

**3.10**   **Confidentiality of Records**.   Manager shall protect to the extent permitted by the Hospital Authorities Law and other Laws, the confidentiality of all records of Authority and assist Authority in complying with all applicable Federal, State and local laws and regulations relating to the records of Authority.   Manager shall notify Authority of any violation of such Laws upon becoming aware of them.   During and following the term of this Agreement, all records of Authority shall remain the property of Authority.

**3.11**   **Quality Control**.   Manager shall cause to be maintained a quality program at the Hospital designed to provide for quality of patient care at the Hospital and Manager shall take all steps necessary to assist Authority to continue meeting Joint Commission accreditation standards.

**3.12**   **Marketing**.  Manager shall:

(a)   Cause to be maintained a marketing program designed to inform and educate health care professionals and the general public served by Authority of the existence of all services offered by the Hospital.

(b)   Cause to be prepared and distributed such descriptive booklets, brochures or pamphlets as may be necessary to inform health care professionals and members of the public of the nature and requirements of State and Federal reimbursement programs for patients and how the same relate to the services offered at Hospital.

**3.13**   **Legal and Risk Management Services**.  Manager shall:

(a)   Cause to be prepared or maintained a Patient's Rights Policy and a Patient Care Policy for the Hospital which complies with all applicable Federal and State standards, subject to Authority's approval.

(b)   Cause to be maintained a risk management program at the Hospital, including periodic safety checks, the installation of and review of the performance of functions of safety committees designed to monitor all incidents involving patients, staff or visitors at Authority and the implementation of corrective procedures designed to remedy such incidents:

7

**EXHIBIT N - 7**

(c)     Caused to be reviewed insurance and other liability claims.

(d)     Manager agrees either with its personnel or through the retention of an insurance consultant at least annually to review the insurance requirements of Hospital and prepare a report of his or her findings for the Authority.  Manager shall review such report and attempt to obtain, at commercially reasonable premiums, the amount and types of insurance coverage determined in the sole discretion of Manager to be necessary for Authority to maintain.

(e)     As part of such insurance coverage, Manager shall maintain a workers' compensation insurance or self insurance program regarding claims by employees of Manager under any worker's compensation or similar laws, and also from any other claims for personal injury, including death or property damage, which may be made by or on behalf of agents or employees of Manager and the general public, in amounts which are customarily carried, subject to customary deductibles, and against such risks as are customarily insured against by other corporations in connection with the ownership and operation of facilities of similar character and size.  All such policies of insurance shall name Authority as an additional insured.

(f)     Cause to be implemented or maintained policies and procedures to comply with the Healthcare Information Portability and Accountability Act ("**HIPAA**").  Authority and Manager agree to abide by HIPAA, its regulations and the policies implemented by Manager as well as any other applicable federal, state, or local privacy or patient confidentiality Laws.  Manager shall recommend from time to time those actions Manager deems necessary for compliance with HIPAA and its applicable regulations, and Authority will promptly cooperate with Manager in implementing such actions. In the course of performing this Agreement Manager will receive or create protected health information (as defined in HIPAA) of/for Hospital and in that regard Manager will be acting as a business associate (as defined in HIPAA) of Authority and Manager will execute a business associate agreement in the form of Exhibit C hereto.

(g)     Cause to be implemented or maintained a compliance program for Hospital in accordance with the state and federal regulations governing compliance program requirements. Manager agrees to refrain, and to cause its employees to refrain, from any activities that could reasonably be expected to cause Manager or Hospital to act in a manner that is inconsistent with such compliance program.  Specifically, but without limitation, Manager agrees to abide, and to cause its employees to abide, by Medicare and Medicaid billing and coding requirements, including proper documentation of services. Manager will from time to time undertake actions that Manager deems necessary to ensure that Authority, Hospital and Manager in the operation of Hospital comply with applicable Laws, and, as required Authority will promptly cooperate with Manager's actions under Manager's compliance program for Hospital, including annual internal and external audit to detect and prevent improper activities.  Manager's Chief Compliance Officer (CCO) shall be the CCO of Hospital, and during the term of this Agreement will have reporting access and responsibility directly to the Authority.

**3.14   Other Action**.  Except as otherwise limited by this Agreement, Manager may take any other actions necessary and appropriate, in its sole opinion and discretion, to manage the Hospital as long as such action is under the authority of the Manager and does not in any material manner obligate Authority beyond the end of the Operating Period.  During the initial Operating

8

Period of this Agreement Manager shall not discontinue or eliminate any services offered at Hospital as of the Effective Date of this Agreement and shall ensure that the emergency room is open and operating twenty-four hours, seven days a week during the Operating Period.  Any change in the licensure, payment model, classification or operations of the hospital other than as an acute care PPS hospital shall be subject to the prior written approval of the Authority.

   **3.15** **Visits to Hospital**.  Manager shall cause the Administrative Managers of the Hospital  to be on site at Hospital as needed to coordinate, review and supervise the operations of the Hospital and Manager shall cause its other executive personnel to visit Hospital as necessary.

   **3.16** **Additional Reports**.  Manager agrees to prepare, cause to be prepared or otherwise make available reports regarding the operation of Authority as follows:

   (a) Within forty-five (45) days after the end of each fiscal quarter, Manager shall make available to Authority the following information:

    (i) Relevant utilization statistics for Authority for the prior quarter, including but not limited to patient volume for each department or clinical service, payor mix on a departmental or clinical service basis; and

    (ii) Financial statements and budget analysis for Authority for the prior quarter, including but not limited to a report in reasonable detail on Authority Accounts transactions.

   (b) Manager shall provide to Authority, on at least thirty (30) days' notice, or sooner if necessary, to implement such required action, a description of any needed or discontinued services, refinancing proposals, expansion plans or material changes in operating procedures.  The proposal shall explain the reasons for the proposed activity.

   (c) Manager agrees to respond, in writing, to any and all recommendations made by Authority's CPAs, which response shall either acknowledge that an audit proposal or recommendation has been implemented or, if not, the reasons why not.

## 4. LIMITATIONS ON RESPONSIBILITIES OF MANAGER

   **4.01** **Risk of Loss**.  At all times during and following the term of this Agreement, the risk of loss with respect to Hospital operations and assets shall be borne by Authority, subject to the indemnification section below Section 8.

   **4.02** **Liabilities**.  Manager shall not be responsible for liabilities incurred by Authority, either in the name of or on behalf of Authority, in connection with or as a result of the performance by Manager of Manager's duties under this Agreement.  All such liabilities shall be solely the obligations of Authority, subject to the indemnification section below Section 8.

   **4.03** **Expenses**.  Manager shall not be responsible for the payment of any expenses incurred by Manager and/or the Administrative Managers on behalf of Authority in the performance

9

of the duties of the Manager and/or the Administrative Managers under this Agreement.  All such expenses shall be solely the obligations of Authority.

**4.04    Licensure**.  Manager shall not, without the prior written consent of Authority, act in a manner which could adversely affect the licensure of the Hospital by the State of Georgia as an acute care PPS hospital or the accreditation of the Hospital by The Joint Commission ("TJC"). Within thirty (30) days of receipt by Hospital or Manager of any final report or written assessment concerning the licensure of Hospital by the State of Georgia as an acute care hospital or the accreditation of the Hospital by TJC, Manager shall furnish a copy of such report to the Authority.

**5.    FINANCIAL MATTERS**

**5.01    Handling and Disposition of Funds**.  Funds originating from the operation of the Hospital and received by Manager shall be received, handled, managed and disposed as set forth in this Section 5.01.

(a)    Manager shall deposit all funds actually received by it from the operation of Hospital, and all working capital loans advanced for and on behalf of Authority, in a bank account or accounts bearing the name of Authority (hereinafter the "Authority Accounts") in a bank or banks approved by Authority and Manager. Only moneys derived from the operation of the Hospital shall be deposited into the Authority Accounts.  The funds on deposit in the Authority Accounts shall not be commingled with any other funds of the Authority or any other accounts or funds of the Manager. Manager shall have no liability or responsibility for any loss resulting from the insolvency, malfeasance or nonfeasance of the bank or banks in which such funds are deposited.

(b)    Authority and Manager shall control Authority Accounts and shall each have the right to make withdrawals from and use Authority Accounts for the purposes of operating the Hospital and performing their obligations hereunder, paying all necessary and reasonable expenses and debts incurred in acquiring and operating Hospital (including but not limited to paying directly to each employee of Manager that employee's individual Employee Compensation), performing the terms and conditions of the Asset Purchase Agreement and paying Manager's fees, as set forth in Section 6.01 of this Agreement, until the expiration or termination of this Agreement, at which time Manager shall resign as co-signatory or authorized signatory for the account.  Manager shall document all withdrawals from Authority Accounts and shall provide to the Authority documentation, reasonably acceptable to Authority, of the purpose and amount of each withdrawal. From such accounts, Manager may pay to itself all its fees, as set forth in Section 6.01 of this Agreement, and reimbursements due hereunder.

**5.02    Manager Not to Pledge Authority Credit**.  Manager shall not, under any circumstance, pledge the credit of Authority or the revenues of the Hospital, nor shall Manager in the name of, or on behalf of, Authority borrow any money or execute any promissory note, bill of exchange or other obligation, or dispose of any asset of Authority not in the ordinary course of business, without the consent of Authority.

**5.03    Reimbursement for Advances**. Everything done by Manager in the performance of and pursuant to its obligations and duties hereunder, and all its costs and expenses incurred under

10

CONFIDENTIAL                                                          PP-HC-00002959

**EXHIBIT N - 10**                                   PX0009-010

and pursuant to this Agreement, including but not limited to the provision of all employees necessary for the operation of Hospital and the Administrative Managers, shall be for Authority's account and shall be reimbursed by Authority from the Authority Accounts.  In the event that Manager shall have advanced any funds of its own to third parties in payment of expenses for Authority, Authority agrees to reimburse Manager within fifteen (15) days after receipt of written notice of the advance or advances.  Manager shall notify Authority of such advances and shall furnish Authority with receipts evidencing such advancements.

6.    **COMPENSATION TO MANAGER**

      **Compensation to Manager**.  During the term of this Agreement, Authority shall pay Manager for its management services a management fee of One Dollar and No Cents ($1.00) per year as well as a monthly reimbursement to Manager of a sum which is the equivalent of the Administrative Manager Reimbursement and Employee Compensation as defined in Section 3.01. Authority will also reimburse Manager for other general operating expenses and for incidental expenses of employees of Manager (or its affiliated entities) which are directly related to the performance of Manager's management services, including, but not limited to, mileage reimbursement and occasional lodging and meals.  To the extent Manager may provide other services not provided for in this Agreement, such as dietary, clinical laboratory, laundry, waste removal, materials management, environmental services, information systems, educational services, biomedical engineering, maintenance and the like, such are not included in the compensation set forth above, but, rather, shall be subject to payment as additional amounts as may be agreed upon in the normal purchasing process of Hospital.

7.    **DEFAULT AND TERMINATION**

      **7.01    Non-Financial Default**.  In the event either party to this Agreement deems the other party to be in default of its obligations hereunder, then said party shall be required to provide notice of the alleged default to the other party, which notice shall contain detailed specifications (which shall be deemed to have occurred on the date the specifications were mailed to the party by certified mail, return receipt requested).  The party being charged with the default shall have thirty (30) days in which to:

      (a)    Correct the alleged default or provide appropriate assurances to the charging party that the default will be timely corrected; or

      (b)    File notice with the charging party that the party against whom the default has been charged denies that the factual matters alleged constitute a default under this Agreement.  In the event this latter course is chosen, the parties do hereby covenant and agree to submit such matter to binding arbitration in Dougherty County, Georgia, in accordance with the American Health Lawyers Association Alternative dispute Resolution Service Rules of Procedure for Arbitration and applying the laws of Georgia.  Any determination by the arbitrator shall be final and binding upon each of the parties, and judgment thereon may be entered in any court having jurisdiction thereof.  The costs shall be borne equally by both parties.  During the pendency of any such arbitration and until final judgment thereon has been entered, this Agreement shall remain in full force and effect unless otherwise terminated as provided hereunder.

11

CONFIDENTIAL                                                                 PP-HC-00002960

PX0009-011

**7.02    Financial Default**.    In the event Authority fails to make the payments or reimbursements due to Manager pursuant to this Agreement, then (but only after thirty (30) days' written notice of said default, during which period Authority may cure the default), Manager shall be authorized, at its option, to terminate this Agreement.

**7.03    Termination**.

(a)    In the event of a party's failure to cure a default within the time allowed for curing a default, the non-defaulting party may immediately terminate this Agreement and neither party shall have any further obligations under this Agreement, except those provided for by this Agreement.

(b)    The parties may mutually agree at anytime to terminate this Agreement.

(c)    This Agreement shall automatically terminate upon the effective date of an executed lease agreement between the Authority and a lessee for the lease of Hospital (the "Termination Date").

**7.04    Effect of Termination**.

(a)    In the event of termination of this Agreement, Manager shall remove itself as a signature to the Authority Accounts and turn over to Authority within ten (10) days following the expiration or termination of this Agreement all business records of the Authority pertaining to Hospital and all medical records shall be maintained by Hospital and shall remain the property of Hospital.

(b)    Within ten (10) days upon the termination or expiration of this Agreement, Administrative Managers shall cease employment with Manager and Authority shall employ the Administrative Managers based upon the terms and conditions of the Administrative Manager's compensation and benefit packages in effect on the Effective Date of this Agreement.

**8.    INDEMNITY**

Except for acts or omissions for which Authority is responsible in whole or in part, Manager agrees to protect, indemnify, defend by counsel reasonably acceptable to Authority and hold Authority, its affiliates and its successors and assigns, and the members, directors, officers, employees, agents and independent contractors (collectively "Indemnitees") free and wholly harmless from and against any and all losses, claims, liens, encumbrances, charges, obligations, damages, remediation, liabilities, demands, suits, causes of action, proceedings, costs and expenses whatsoever (including without limitation consequential damages, interest, fines, claims for the recovery of response costs and reasonable attorneys', engineering consultants', accounting, and other necessary professional fees and expenses), in each case whether known or unknown (to Authority) absolute or contingent, accrued or unaccrued, and including without limitation unasserted claims incurred or suffered by Indemnitees, or any of them, directly or indirectly, caused by acts or omissions of Manager or Manager's employees which occurred during the term of this Agreement or any breach of any representation, warranty, covenant, term or agreement of Manager contained in this Agreement.

12

9.    **MISCELLANEOUS**

9.01    <u>**Binding Agreement**</u>.  This Agreement and the rights and obligations of the parties hereunder may not be assigned by either party and shall inure to the benefit of and be binding upon the parties hereto and their respective successors and permitted assigns.  Any assignment in violation of this Section 9.01 shall be null and void.

9.02    <u>**Governing Law**</u>.  This Agreement shall be deemed to be made in, and in all respects shall be interpreted, construed and governed by and in accordance with, the laws of the State of Georgia.

9.03    <u>**Heading**</u>.  The section and subsection headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of the Agreement.

9.04    <u>**Notices**</u>.  All communication provided for hereunder shall be in writing and shall be deemed to be given when delivered in person or deposited in the United States Mail, first-class, registered or certified, return receipt requested, with proper postage prepaid, and delivered to the parties at their respective addresses.

Hospital Authority of Albany-Dougherty County, Georgia, as follows:

> Hospital Authority of Albany-Dougherty County
> 417 Third Avenue
> P.O. Box 1828
> Albany, GA 31702

with copies to:    Perry & Walters, LLP
> 312 North Westover Blvd
> Post Office Box 71209
> Albany, GA  31708-1209
> Attn:  James E. Reynolds, Jr., Esq.

Phoebe North, Inc., as follows:

> Phoebe North, Inc.
> 417 Third Avenue
> Albany, Georgia 31702
> Attention: Thomas S. Chambless, General Counsel

13

CONFIDENTIAL                                    PP-HC-00002962

**EXHIBIT N - 13**                    PX0009-013

with copies to:     Baudino Law Group, PLC
                    2600 Grand Avenue, Suite 300
                    Des Moines, IA 50312
                    Attention:  Robert J. Baudino, Jr., Esq.

**9.05    Survival of Representation**.  All of the representations, warranties, covenants and agreements contained in this Agreement shall survive the expiration or the termination, for any reason of this Agreement.  No performance or execution of this Agreement, in whole or in part, by any party hereto, no course of dealing between or among the parties hereto or any delay or failure on the part of any party in exercising any rights hereunder or at law or inequity, and no investigation by any party hereto, shall operate as a waiver of rights of such party, except to the extent expressly waived in writing by such party.

**9.06    Counterparts**.  This Agreement may be executed in two or more counterparts each of which shall be deemed to be an original, but all of which together shall constitute one and the same instrument.

**9.07    Severability**.  Each and every provision of this Agreement is severable, and the invalidity of one or more of such provisions shall not, in any way, affect the validity of this Agreement or any other provisions hereunder.

**9.08    Cumulative Rights and Remedies**.  Any right, power or remedy provided under this Agreement to any party hereto shall be cumulative and in addition to any other right, power or remedy provided under this Agreement or existing in law or in equity, including, without limitation, the remedies of injunctive relief and specific performance.

**9.09    Entire Agreement**.  Except for the Asset Purchase Agreement, this Agreement is intended by the parties hereto to be the complete and final expression of their agreement and is the complete and exclusive statement of the terms thereof notwithstanding any representation or statement to the contrary heretofore made.

**9.10    Modification**.  This Agreement may only be amended by a writing signed by Authority and Manager.

**9.11    Attorneys' Fees**.  If any action, including arbitration, shall be brought to enforce this Agreement, the prevailing party shall be entitled to its attorneys' fees and costs.

**9.12    Binding Effect**.  This Agreement has been duly executed by the parties hereto and constitutes a valid and binding obligation enforceable in accordance with its terms, except as enforceability may be limited by bankruptcy, insolvency, reorganization or other similar laws affecting the rights of creditors generally, and except as enforceability may be subject to general principles of equity.

**9.13    Independent Contractor Status**.   Notwithstanding any provision contained herein to the contrary, each of Authority and Manager understand and agree that the parties hereto intend

14

to act and perform as independent contractors and that therefore neither Authority nor Manager is an employee, partner, joint venturer, of the other.  Nothing in this Agreement shall be construed as placing the parties in a relationship of employer-employee, partners or joint venturers.  Neither party shall have the right to make any promises, warranties or representations, or to assume or create any obligations, on behalf of the other party, except as otherwise expressly provided herein.  Authority and Manager agree to be solely and entirely responsible for their respective acts and for the acts of any of its employees and agents, except as otherwise expressly provided herein.

     **9.14**   **Compliance with Law, Revenue Procedure 97-13 and Changes in Law**.  The parties hereto have made all reasonable efforts to ensure that this Agreement represents and memorializes the arrangement between the parties hereto and that it complies with all applicable Law, including, but not limited to, all applicable health care Laws and Internal Revenue Procedure 97-13.  The parties are aware that there may be no clear or definitive guidance with respect to the applicability of various health care Laws to the arrangement contained herein.  While the parties have attempted to review and analyze all applicable Law in an effort to comply with same, the parties acknowledge that the applicable health care Laws and interpretations thereof, are often vague and are constantly changing.  The parties therefore understand and acknowledge that as applicable Law, and interpretations thereof, become more settled including, but not limited to, interpretations of Internal Revenue Service Procedure 97-13, this Agreement may need to be amended in order to comply with such Law, including, but not limited to, Internal Revenue Service Procedure 97-13, or interpretations thereof, as the case may be.  In the event there is such a change in Law, or the interpretations thereof, whether by statute, regulation, agency or judicial decision, or otherwise, that has any material effect on any term of this Agreement, or in the event that a party's reputable counsel with experience in health care Law or tax-exempt financing Law determines that any term of this Agreement poses a material risk of violating such Laws, including, but not limited to, Internal Revenue Service Procedure 97-13, then the applicable term(s) of this Agreement shall be subject to renegotiation and either party may request renegotiation of the affected term or terms of this Agreement, upon written notice to the other party, to remedy such condition. In the interim, the parties shall perform their obligations hereunder in full compliance with applicable Law.  The parties expressly recognize that upon request for renegotiation, each party has a duty and obligation to the other only to renegotiate the affected term(s) in good faith and, further, the parties expressly agree that their consent to proposals submitted by the other party during renegotiation efforts shall not be unreasonably withheld.    The parties further expressly recognize that in any such renegotiation, the relative economics to each of the parties shall be preserved.  Should the parties be unable to renegotiate the term or terms so affected so as to bring it/them into compliance with the statute, regulation, decision or interpretation that rendered it/them unlawful or unenforceable within thirty (30) days of the date on which written notice of a desired renegotiation is given, then either party shall be entitled, after the expiration of said thirty (30) day period, to terminate this Agreement upon sixty (60) additional days prior written notice to the other party, provided that such party has received an opinion of reputable legal counsel, which legal counsel and opinion are reasonably acceptable to the other party, that it is more likely than not that this Agreement violates applicable Law, including, but not limited to, Internal Revenue Service  Procedure 97-13.

     I**N WITNESS WHEREOF**, the undersigned parties have entered into this Management Services Agreement effective as of the date first written above.

15

**Hospital Authority of Albany-Dougherty County**

By:_____
    Ralph Rosenberg
    Chairman


**Phoebe North, Inc.**

By:_____
    Joel Wernick
    President and Chief Executive Officer

16

CONFIDENTIAL

PP-HC-00002965

**EXHIBIT N - 16**

PX0009-016

**EXHIBIT A**

**ADMINISTRATIVE MANAGERS**

17

PP-HC-00002966

**EXHIBIT N - 17**

PX0009-017