# EXHIBIT O

RESOLUTIONS OF HOSPITAL AUTHORITY OF ALBANY-DOUGHERTY COUNTY, GEORGIA: APPROVING EXECUTION AND DELIVERY OF SECOND AMENDMENT TO ASSET PURCHASE AGREEMENT AND APPROVING BASIC TERMS AND PROVISIONS TO BE INCLUDED IN ANY REVISED LEASE WITH PHOEBE PUTNEY MEMORIAL HOSPITAL, INC.

WHEREAS, the Hospital Authority of Albany-Dougherty County, Georgia (the "Authority") is a public body, corporate and politic, of the State of Georgia, created under the Hospital Authorities Law, O.C.G.A. Section 31-7-70, et seq (the "Act"), and jointly activated by the City of Albany, Georgia (the "City") and Dougherty County, Georgia (the "County") pursuant to a resolution jointly adopted by the City and the County on July 22, 1941 and August 4, 1941; and

WHEREAS, after years of study, effective as of December 11, 1990, the Authority entered into a Lease and Transfer Agreement (as currently amended, the "Lease") with respect to the assets and operation of Phoebe Putney Memorial Hospital ("PPMH"), so that from such date the Authority has operated PPMH utilizing the Lease with Phoebe Putney Memorial Hospital, Inc., a non-profit Georgia corporation, as Lessee; and

WHEREAS, the Authority finds that its decisions with respect to restructuring, as implemented in December of 1990, have proven to well and effectively carry out the mission and purposes of the Authority and the Authority acknowledges that this arrangement has worked well for the community through PPMH's having provided high quality medical services to all citizens of the community, as envisioned by the Act; and

WHEREAS, on December 21, 2010, the Authority approved and entered into an Asset Purchase Agreement (the "APA") by and among itself, Phoebe Putney Health System, Inc., Phoebe North, Inc. and Palmyra Park Hospital, Inc. ("Seller"), under which Agreement the Authority will acquire from Seller and its affiliates, substantially all of the assets used exclusively in the operation of Palmyra Medical Center ("PMC"); and

WHEREAS, the APA was amended once, as of January 28, 2011; and

WHEREAS, it appears prudent and in order for the APA to be amended for a second time, in order to further extend the dates for Closing, for Termination thereunder, and for the Accounting Date described therein; and

WHEREAS, it is envisioned that during an initial period of months following the Authority's acquisition of PMC, the Authority will operate PMC itself, utilizing a Management Agreement which has been previously approved in substantially final form by the Authority; and

**EXHIBIT O - 1**

WHEREAS, it is anticipated by the Authority that following the Closing under the APA, it will seek to enter into a revised lease (the "Revised Lease") with Phoebe Putney Memorial Hospital, Inc., which Revised Lease will cover the operations of both Phoebe Putney Memorial Hospital and Palmyra Medical Center, thereby replacing the current Lease and so that the Revised Lease will include new and additional provisions beyond those contained in the current Lease; and

WHEREAS, the Authority at this time wishes to set forth and approve certain terms and provisions which it will require and which it expects to be included in any such Revised Lease, so that in preparing the proposed Revised Lease, the attorneys and staff are directed to incorporate such provisions and terms within the Revised Lease, as well as other needed provisions.

NOW THEREFORE, the Authority hereby adopts the following Resolutions:

Resolution No. 1: The Second Amendment to the APA as presented at this meeting is hereby approved and the Chairman, or in his absence the Vice Chairman, of the Authority is hereby authorized and directed to execute and deliver in the name of and on behalf of the Authority, such Second Amendment, subject to such changes, insertions or deletions as may be approved by the authorized officer of the Authority executing the same. The proper execution of the Second Amendment to the APA shall be conclusive evidence of the approval of any such changes, insertions or omissions. A copy of the Second Amendment to the APA as presented, reviewed and discussed at this meeting is to be included with the Minutes of this meeting.

Resolution No. 2: The Authority hereby approves the proposed listing of terms and provisions (collectively, the "Terms") presented, reviewed and discussed at this meeting, so that the same is to be included in any Revised Lease. Having considered the same, the Authority finds that the inclusion of the Terms in any Revised Lease shall further the mission and purposes of the Authority by: including more clear and explicit ongoing oversight provisions regarding Lessee's performance under the Revised Lease; more clearly permitting the Authority to determine that Lessee's established rates and charges are in conformance with the Act and in particular O.C.G.A. §§ 31-7-75(7), 31-7-76(d)(1) and 31-7-77; and, to further achieve policy goals and purposes which are expressly set forth or inherently set forth in the provisions of the Act and the Revised Lease. Such policy goals include, without limitation, operating PPMH and PMC for the public's benefit and providing for the health care needs of the

**EXHIBIT O - 2**

Community; providing charity and indigent care for our citizens; expressly qualifying for Medicaid, ICTF UPL funding; and, generally making additional healthcare facilities available in the community while lowering or keeping low the costs of such healthcare as contemplated by the Act.

Resolution No. 3: The Authority, having approved of the inclusion of the Terms in any Revised Lease, hereby authorizes and directs its proper officers and its attorneys to, at a minimum, include in any proposed Revised Lease presented to the Authority, the Terms set forth in the Memorandum presented and discussed at this meeting, a copy of which Memorandum is to be included in the Minutes of the Authority.

Duly adopted this 4th day of April, 2011.

HOSPITAL AUTHORITY OF ALBANY-DOUGHERTY COUNTY, GEORGIA

BY: _____

[SEAL]              Its: _____

 **BAUDINO LAW GROUP**

Des Moines
Albany
Atlanta

# MEMORANDUM

**TO:** Hospital Authority of Albany-Dougherty County, Georgia
James E. Reynolds, Jr. Esq.

**FROM:** Robert J. Baudino, Jr., Esq.
Karin A. Middleton, Esq.

**DATE:** April 4, 2011

**RE:** Key Terms to be Included in a Revised Lease Between the Hospital Authority of Albany-Dougherty County and Phoebe Putney Memorial Hospital, Inc. for the Addition of the Palmyra Medical Center Assets

The purpose of this memorandum is to identify to you our recommendations as to what are both general key terms and specific key terms for on-going active Hospital Authority of Albany-Dougherty County ("Authority") supervision of Phoebe Putney Memorial Hospital, Inc. as the lessee of both Phoebe Putney Memorial Hospital and Palmyra Medical Center. It is our advice that the following terms should be included in a Revised or Restated Lease between the Authority and Phoebe Putney Memorial Hospital, Inc. ("Lessee"). What is set out below is intended to be a description of terms that the Authority should require; the actual language will be developed in the Revised Lease.

There will of course be additional general terms contained in the Revised Lease other than what is set out here, following similar provisions included in the existing Lease and Transfer Agreement that was originally executed in December 1990. We have elected not to include a description of each and every probable provision of the Revised Lease, rather what is set out here are those general and specific provisions describing the Authority's active supervision of the conduct and activities of the Lessee. For example, we are not setting out here the Article V provisions on asset transfers and dispositions or the asset reversion language or the insurance coverage language. All of those type of general lease terms are assumed to continue to be in a Revised Lease.

Baudino Law Group, PLC
2409 Westgate Drive
Albany, Georgia 61707
(229) 883-0051
(229) 888-6190 Fax

**EXHIBIT O - 4**

April 4, 2011
Page 2

### A. General Terms To Be Included In The Revised Lease

The Revised Lease shall generally provide, as follows:

1. Revised Lease shall provide that upon its effective date Lessee shall transfer the sum of $200,000.00 to the Authority for the Authority's use in its sole discretion in paying the Authority's operating expenses including, but not limited to, payment for necessary employees, legal, accounting or expert consultant support for oversight activities contemplated by Revised Lease. The Revised Lease shall further provide for the Lessee to transfer funds to the Authority at any time the Authority's funds on hand are not sufficient to pay its operating expenses. After the initial deposit of $200,000.00 and the payment of operating expenses from that fund by the Authority, it will be the intention of the parties that the Authority will have on hand at all times under its control during the term of the Revised Lease a fund of not less than $100,000.00 to pay the Authority's operating expenses. The Revised Lease shall also provide language allowing the Authority and Lessee to periodically review the amount of funds the Authority should keep on hand and mutually agree in writing to adjust the total amount of funds kept on hand by the Authority to reflect its actual operating expense needs. As required by the Authority, Lessee shall make available to the Authority facilities as needed for the Authority's use.

2. Revised Lease shall confirm that the Authority is vested with ultimate and final authority, pursuant to terms thereof, for the Hospital (as the term "Hospital" is used in this memorandum it is intended to include the Phoebe Putney Memorial Hospital campus and the Palmyra Medical Centers campus as one hospital with two locations) so as to better to bring about achievement of the public policy goals and purposes which are expressly set forth or inherently implicit in the provisions of the Lease and the Georgia Hospital Authorities Law, including, but not limited to, operating the Hospital for the benefit of the general public and providing for the health care needs of the community and qualifying for Medicaid Indigent Care Trust Fund and Medicare Upper Payment Limit ("ICTF UPL") funding.

3. Revised Lease shall require the Lessee to operate the Hospital in furtherance of the Authority's objectives that the Hospital meet the health needs of the community, operate for the benefit of the general public and have a beneficial effect upon health care in the community.

4. Revised Lease shall recite how Lessee's leasing of Hospital from Authority either makes additional facilities and care available in the community or lowers the cost of health care in the community.

April 4, 2011
Page 3

5.  Revised Lease shall specify that Lessee shall not contravene in any way the mandate sent forth at Georgia Hospital Authorities Law at O.C.G.A. § 31-7-77 that no authority shall operate or construct a project for profit.

6.  Revised Lease shall require the Lessee to be recognized as exempt from taxation under IRC § 501(c)(3).

7.  Revised Lease shall require Lessee to operate the Hospital in conformance with requirements for charitable hospitals under IRC § 501(c)(3).

8.  Revised Lease shall require one member of the Authority to serve as a full voting member on the Lessee's governing board.

9.  Revised Lease shall lease to Lessee all assets of the Hospital for operation as a hospital under the terms of the Lease with Lessee having all right and authority to the use of the income of the Hospital and all responsibility for the expenses and liabilities of the Authority and the Hospital.

10. Revised Lease shall require that all employees necessary for the operation of the Hospital be employed or provided by Lessee.

11. Revised lease shall be for forty years.

12. Revised Lease shall require compliance with federal, Georgia and local laws applicable to Hospital's operations.

13. Revised Lease shall require participation in core Medicare, Medicaid and other core government payor programs.

14. Revised Lease will require the Hospital to continue to provide emergency services.

15. Revised Lease shall require Hospital to provide indigent and charity care to the community served by the Authority.

### B. Reporting and Oversight Requirements To Be Included In the Revised Lease

To assist the Authority in ensuring on an on-going basis that operation of the Hospital by Lessee meets the requirements of the Revised Lease, the Revised Lease shall provide, as follows:

1.  Lessee shall provide an annual report ("Report") to the Authority addressing Lessee's performance on the following:

April 4, 2011
Page 4

    (a)    making additional facilities and care available in the community and/or lowering the cost of health care in the community;

    (b)    identifying activities that address the unmet health needs of the community served by the Authority;

    (c)    providing indigent and charity care to the community served by the Authority;

    (d)    participating in the Medicare and Medicaid programs;

    (e)    attesting to Lessee's compliance with O.C.G.A. § 31-7-77, as it may-be amended from time to time by the Georgia Legislature, regarding rates and charges; and

    (f)    making additions to or changes in the type or quality of Lessee's services.

The Report required by 1(e) above shall provide information that the rates and charges fixed by Lessee are consistent with the policy of the State of Georgia set forth at O.C.G.A. § 31-7-77, as it may be amended from time to time by the Georgia Legislature, and have produced revenues only in amounts sufficient, together with other funds of the Lessee, to: (i) pay principal and interest on certificates and obligations of the Authority; (ii) provide for the maintenance and operation of the project; (iii) create and maintain a reserve sufficient to meet principal and interest payments due on any certificates in any one year after issuance thereof; and (iv) provide for reasonable reserves for the improvement, replacement or expansion of its facilities and services.

The annual Report described at (a) through (f) above shall be made available to the public prior to any Authority meeting at which the Authority reviews the Report. An Authority meeting shall be held to review the annual Report and within thirty (30) days of the meeting, the Authority shall issue a written decision approving, disapproving or expressing any concerns or objections to Lessee with regard to the Report. The decision of the Authority may be made at the meeting at which the Report was reviewed if the members of the Authority so choose. The written decision, which maybe in the form of a motion or resolution recorded in the written minutes of the meeting, shall set forth the reasons for the Authority's approval, disapproval or concerns and shall identify any conduct, activities or rates and charges information that require remediation. Any determination of disapproval or concern with Lessee's compliance with O.C.G.A. § 31-7-77 shall be based upon the application of the provisions of O.C.G.A. § 31-7-77. The Authority shall not unreasonably withhold its acceptance of the Report. The Authority's decision shall be made public. In the event of disapproval or concerns expressed by the Authority with the Report further

April 4, 2011
Page 5

consultation between Lessee and the Authority shall occur within thirty (30) days or such longer period as may be granted by the Authority to accomplish remediation and may result in submittal of a supplement to the Report by the Lessee to the Authority.

The Revised Lease shall state that if the Authority shall determine after reviewing the annual Report that the portion of the Report described at B (1)(e) above that the provisions of O.C.G.A. § 31-7-77 are not being complied with and remediation within the time period set by the Authority has not occurred, such event may be deemed by the Authority a basis for termination of the Revised Lease pursuant to the "Default and Remedies in Event of Default" provisions in the Lease.

2. Lessee, within thirty (30) days after adoption, shall provide Authority with an operating and capital budget for Hospital for the fiscal year yet to commence, or any other fiscal reporting period.

3. Lessee, within ninety (90) days of the close of any fiscal year, shall furnish to Authority its complete and detailed financial statements reported on by a firm of certified public accountants retained by Lessee or Phoebe Putney Health System, Inc., to audit Lessee's financial statements and prepared in accordance with GAAP and including a balance sheet, statements of operations, changes in net assets and statements of cash flow.

4. Lessee, within ninety (90) days after the close of each fiscal year to enable Authority to prepare and submit its annual Community Benefit Report (O.C.G.A. § 31-7-90.1), shall furnish a comprehensive report (which may be accomplished by submission Internal Revenue Service reports if those reports contain the same information) which discloses the cost and extent of indigent and charity care provided by Lessee for Authority during the last fiscal year. This report shall present to the Authority a statement reflecting the type of indigent and charity care provided by Lessee for Authority, the number of indigent persons served, the categorization of those indigent persons by county of residence and the cost in dollars of indigent and charity care provided by Lessee for Authority. The report on indigent care shall be made available to the public prior to any Authority meeting at which the Authority reviews the report. An Authority meeting shall be held to review the report and within thirty (30) days of the meeting, the Authority shall issue a written decision approving, disapproving or expressing any concerns or objections to Lessee with regard to the Report. The decision of the Authority may be made at the meeting at which the Report was reviewed if the members of the Authority so choose. The written decision, which maybe in the form of a motion or resolution recorded in the written minutes of the meeting, shall set forth the reasons for the Authority's approval, disapproval or concerns and shall identify any conduct or activities that require remediation. The

April 4, 2011
Page 6

Authority shall not unreasonably withhold its acceptance of the report. The Authority's decision shall be made public. In the event of disapproval or concerns expressed by the Authority with the report further consultation between Lessee and the Authority shall occur within thirty (30) days or such longer period as may be granted by the Authority to accomplish remediation and may result in submittal of a supplement to the report by the Lessee to the Authority.

The Revised Lease shall state that if the Authority shall determine after remediation within the time period set by the Authority that remediation has not occurred such event may be deemed by the Authority a basis for termination of the Revised Lease pursuant to the "Default and Remedies in Event of Default" provisions in the Lease.

5. Every three years, Lessee shall furnish a report to the Authority on the unmet health needs of the community to enable the Authority to plan for the unmet health needs of the community as required by O.C.G.A. § § 31-7-5 (22) and 31-7-76 (d)(4). The report on unmet health needs shall be made available to the public prior to any Authority meeting at which the Authority reviews the report. An Authority meeting shall be held to review the tri-annual report and within thirty (30) days of the meeting, the Authority shall issue a written decision approving, disapproving or expressing any concerns or objections to Lessee with regard to the report. The decision of the Authority may be made at the meeting at which the report was reviewed if the members of the Authority so choose. The written decision, which maybe in the form of a motion or resolution recorded in the written minutes of the meeting, shall set forth the reasons for the Authority's approval, disapproval or concerns and shall identify any conduct or activities that require remediation. The Authority shall not unreasonably withhold its acceptance of the tri-annual report. The Authority's decision shall be made public. In the event of disapproval or concerns expressed by the Authority with the tri-annual report further consultation between Lessee and the Authority shall occur within thirty (30) days or such longer period as may be granted by the Authority to accomplish remediation and may result in submittal of a supplement to the tri-annual report by the Lessee to the Authority.

The Revised Lease shall state that if the Authority shall determine after remediation within the time period set by the Authority that remediation has not occurred such event may be deemed by the Authority a basis for termination of the Revised Lease pursuant to the "Default and Remedies in Event of Default" provisions in the Lease.

6. The Revised Lease shall require Lessee to provide the Authority with such information as the Authority may require to permit Authority to annually review Lessee's prices, charges and rates and make a determination as to whether

April 4, 2011
Page 7

Lessee's prices, rates or charges are acceptable to the Authority. The Revised Lease shall provide that the Authority's annual review and determination shall occur following its receipt and review of the operating and capital budget for Hospital for the fiscal year yet to commence described at B (2) above. Unless the information regarding Lessee's prices, rate or charges the Authority is to review contains competitively sensitive or proprietary information, the information the Authority is to review shall be made available to the public prior to the Authority meeting at which the Authority reviews Lessee's prices, rates or charges. An Authority meeting shall be held annually to review Lessee's prices, charges and rates and within thirty (30) days of the meeting, the Authority shall issue a written decision that approves, disapproves or expresses concerns or objections to Lessee with regard to its prices, charges or rates. The decision of the Authority may be made at the meeting at which the information on Lessee's prices, rates and charges was reviewed if the members of the Authority so choose. The written decision of the Authority to approve, disapprove or express concerns or objections to Lessee with regard to its prices, charges or rates, which maybe in the form of a motion or resolution recorded in the written minutes of the meeting, shall set forth the reasons for the Authority's determination and in making such determination shall be based upon a determination as to whether Lessee's prices, charges and rates: (i) enable Lessee to make facilities and services available to the community, meet unmet health care needs of the community, improve the quality of care or health outcomes of the community, and provide for indigent and charity care for the community and (ii) meet the requirements of O.C.G. A. § 31-7-77, as it may be amended from time to time by the Georgia Legislature. In the event the Authority's decision is to disapprove or express concerns, the decision shall identify any conduct, activities or prices, rates or charges that require remediation. The Authority shall not unreasonably withhold its acceptance of Lessee's prices, charges or rates. The Authority's decision shall be made public.

The Revised Lease shall also require Lessee to make a presentation at the Authority meeting held to review Lessee's prices, charges and rates as to the status of Lessee's current and prospective contracts and prospective contracting strategy with commercial third party payors. The Authority shall make a determination of its approval, disapproval or concerns regarding Lessee's current and prospective contracts and prospective contracting strategy with commercial third party payors. This determination shall be based upon whether Lessee's contracts, prospective contracts and prospective contracting strategy with commercial third party payors: (i) enable Lessee to make facilities and services available to the community, meet unmet health care needs of the community, improve the quality of care or health outcomes of the community, and provide for indigent and charity care for the community and (ii) meet the requirements of O.C.G. A. § 31-7-77, as it may be amended from time to time by the Georgia

April 4, 2011
Page 8

Legislature. The Authority shall not unreasonably withhold its acceptance of Lessee's presentation.

The Revised Lease shall require that within one hundred twenty (120) days after the effective date of the Revised Lease and at least every three years thereafter, Lessee shall furnish a report acceptable to the Authority from a qualified independent consultant selected by Lessee and approved by Authority (and in the event of a failure to agree to the independent consultant, selection by the Authority of the consultant) which independent consultant after reviewing Lessee's prices, rates and charges shall issue a report to the Authority containing the consultant's conclusions, and information sufficient to support those conclusions, as to whether or not Lessee's prices, rates and charges, including prices, rates and charges set by Lessee and prices, rates and charges established in contracts with third party commercial payors, are reasonably consistent with competitive rates in other comparable market areas or to the extent any prices, rates or charges of Lessee may exceed competitive prices, rates or charges in other comparable market areas, they are: (a) necessary and appropriate to make facilities and services available to the community, meet unmet health care needs, or improve the quality of care or health outcomes, or (b) are necessary for compliance with the policy of the State of Georgia set forth at O.C.G.A. § 31-7-77, as it may be amended from time to time by the Georgia Legislature.  This report shall include a discussion of past and current Hospital financial trends, hospital or medical CPI information, or other reasonable benchmarks to assess the reasonableness of Lessee's changes in pricing or rates and charges. The report shall be made available to the public prior to any Authority meeting at which the Authority reviews the report.  An Authority meeting shall be held to review the independent consultant's report and  within thirty (30) days of the meeting, the Authority shall issue a written decision approving, disapproving or expressing any concerns or objections to Lessee with regard to the independent consultant's report.  The decision of the Authority may be made at the meeting at which the independent consultant's report was reviewed if the members of the Authority so choose.  The written decision, which maybe in the form of a motion or resolution recorded in the written minutes of the meeting, shall set forth the reasons for the Authority's approval, disapproval or concerns and those reasons shall be based upon a determination as to whether the independent consultant's report evidences that Lessee's prices, charges and rates are either: (i) reasonably consistent with competitive rates in other comparable market areas or (ii) to the extent any prices, rates or charges of Lessee may exceed competitive prices, rates or charges in other comparable market areas, they are: (a) necessary and appropriate to make facilities and services available to the community, meet unmet health care needs, improve the quality of care or health outcomes, or provide for indigent and charity care or (b) are necessary for compliance with the policy of the State of Georgia set forth at O.C.G.A. § 31-7-77, as it may be amended from time to time by the Georgia

April 4, 2011
Page 9

    Legislature. The Authority shall not unreasonably withhold its acceptance of the report. The Authority's decision shall be made public. The initial independent consultant's report required within one hundred twenty (120) days of the effective date of the Revised Lease may be an independent consultant's report prepared for the Authority during the year 2011. In the event Lessee and the Authority are unable to find an independent consultant qualified and able to perform the review as described above, Lessee and the Authority may agree upon an alternate means of providing the Authority with the independent review and report regarding Lessee's prices, rates and charges described above.

    In the event of disapproval or concerns expressed by the Authority in either its annual review of Lessee's prices, charges and rates or with the report of the independent consultant, further consultation between Lessee and the Authority shall occur within thirty (30) days or such longer period as may be granted by the Authority to accomplish remediation and may result in submittal to the Authority of supplemental price, charge or rate information by Lessee or a supplement to the report of the independent consultant. The Revised Lease shall state that if the Authority shall determine after remediation within the time period set by the Authority that remediation has not occurred such event may be deemed by the Authority a basis for termination of the Revised Lease pursuant to the "Default and Remedies in Event of Default" provisions in the Lease.

7. Lessee shall submit quarterly reports prepared by Lessee to Authority of (i) Hospital's financial performance, including, but not limited to, a balance sheet, a statement of operations and changes in net assets and a statement of cash flow, any alterations to the annual budget previously provided the Authority or significant proposed capital expenditures or acquisitions not identified in the annual budget, the monitoring of operating results and (ii) any other matters of significant financial and strategic importance that might adversely affect community access to Hospital's services. The Authority shall have thirty (30) days to express any concerns or objection to Lessee with regard to the information submitted, which shall provide a basis for further consultation with the Authority and may result in submittal of supplemental information. The Authority shall not unreasonably withhold its acceptance of the quarterly reports.

8. Lessee, within thirty (30) days after its receipt of a final report, shall furnish Authority with the report of the Joint Commission on the accreditation of Hospital.

9. Revised Lease shall further state that the reports, actions and attestations required by B (1) through (8) above shall be for the purpose of permitting the Authority to: (a) provide ongoing oversight regarding Lessee's lease performance; (b) determine that the Lessee has established rates and charges in conformance with O.C.G.A. §§ 31-7-75(6), 31-7-76(d)(1) and 31-7-77; (c) be vested with ultimate and final authority, pursuant to terms of Revised Lease, for

April 4, 2011
Page 10

the Hospital so as better to bring about achievement of the public policy goals and purposes which are expressly set forth or inherently implicit in the provisions of the Georgia Hospital authorities Law and the Revised Lease, including, but not limited to, operating the Hospital for the benefit of the general public and providing for the health care needs of the community and qualifying for Medicaid ICTF UPL funding; and (d) enabling the Authority to comply with its requirements under the Georgia Hospital Authorities Law.

### C. Authority Rights and Remedies To Be Included In the Revised Lease

The Revised Lease shall state that failure of the Lessee to satisfy any material Lease obligations, including those set out here, shall be subject to the "Default and Remedies in Event of Default" provisions in the Lease and will allow Authority to terminate the Lease upon the breach of any of the covenants listed above or failure to remediate the deficiencies identified by the Authority within a defined cure period which period may vary depending upon the type of event.

In particular, Revised Lease shall state that if the Authority shall determine after reviewing that portion of the Report described at B (1)(e) above that the provisions of O.C.G.A. § 31-7-77, as it may be amended from time to time by the Georgia Legislature, are not being complied with, or if the report described at B(6) above of the independent consultant on the reasonableness of rates, charges and contract pricing either does not contain the required information or does not contain the required conclusions, or should Lessee fail to submit its yearly pricing information and commercial third party payor contracting information, any such event may be deemed by the Authority a deficiency in performance requiring remediation and may, if not remedied, provide a basis for termination pursuant to the "Default and Remedies in Event of Default" provisions in the Revised Lease.

### D. Termination Provisions for Winding Down

Revised Lease shall have provisions for continued operation of Hospital post termination during a specified wind-down period.