May 14, 2013

```
1              UNITED STATES DISTRICT COURT
               MIDDLE DISTRICT OF GEORGIA
2                    ALBANY DIVISION

3                  CASE NO.1:11-CV-58

4

5    FEDERAL TRADE COMMISSION,

6         Plaintiff,

7    Vs.

8    PHOEBE PUTNEY HEALTH SYSTEM, INC
     Et al.
9
          Defendants.
10

11
               TELEPHONE STATUS CONFERENCE
12        BEFORE THE HONORABLE W. LOUIS SANDS
            UNITED STATES DISTRICT COURT JUDGE
13

14

15   DATE:                      MAY 14, 2013

16   LOCATION:                  ALBANY, GEORGIA

17   COURT REPORTER:            DARLENE PINO

18

19   APPEARANCES:

20        FOR THE FTC:          JEFFREY PERRY

21        FOR THE HOSPITAL
          AUTHORITY of ALBANY
22        & DOUGHERTY COUNTY:    FRANK LOWREY IV
                                 ED WILKIN
23
          FOR HCA, Inc:         CHARLES PEELER
24

25        FOR PHOEBE NORTH:     LEE VAN VOORHIS
```

May 14, 2013

1

2

3

4              THE COURT:  Good afternoon.

5              MR. PEELER:  Good afternoon, Your Honor.

6              MR. VOORHIS: Good afternoon, Your Honor.

7              THE COURT:  We thank you for your patience, we

8    have some difficulty with our very new and complex

9    technology, ha, ha, but we are here.

10        The Court asked you all to be available for a phone

11   conference today in that the mandate I think did come down

12   yesterday from the Court of Appeals from the Eleventh

13   Circuit regarding FTC versus Phoebe, which for the record,

14   is case 1:11-CV-58.

15        I know, I think I issued a couple orders indicating

16   The Court didn't believe it had any authority to do

17   anything until that mandate was returned.  It has now been

18   returned, and there were some concern I think from the

19   defendant as to whether they would have enough time, the

20   appropriate time under the rules to respond with the time

21   for responding I think probably expiring during the

22   pendency of the mandate being issued by the Court of

23   Appeals.

24        So in the meantime, of course, there has been a

25   substantial amount of time, a significant amount of time

May 14, 2013

3

1    available.  So I was thinking that probably we should be

2    able to get the briefing completed in maybe a shorter time

3    than the normal time from today.  So let me hear from the

4    defendants in that regard first.

5            MR. LOWREY:  Your Honor, this is Frank Lowrey

6    representing the Hospital Authority.  I think most of what

7    I say probably goes for the Phoebe entities as well, if

8    not, Lee Van Voorhis can jump in and speak to that.

9            THE COURT:  Yes.

10           Mr. LOWREY:  It is true some time has passed.

11   The other thing you need, though, to put that into context

12   is that all these lawyers and all of the business people

13   are engaged in a 200 miles an hour sprint to keep pace

14   with the FTC administrative proceedings; and discovery

15   closes at the end of those proceedings the end of May.  We

16   are double tracking depositions to get by.  There were two

17   depositions simultaneously in Albany this morning.  Next

18   week we have three different depositions in one day in

19   three different cities simultaneous:  Cincinnati,

20   Nashville, Thomasville.

21       We understand there are ten depositions not yet

22   scheduled that the FTC wants to take.  In other words, we

23   haven't been here sitting with time on our hands to write

24   a brief and we aren't sitting here with time on our hands

25   in May.

May 14, 2013

```
 1          THE COURT:  With your mentioning that, I
 2  remember now there was some reference to the fact that you
 3  all were engaged in some kind of expedited discovery.
 4          MR. LOWREY:  Yes, sure, and maybe this is the
 5  pace the FTC always proceeds on, but from the standpoint
 6  of any federal court litigation, this is incredibly
 7  expedited.  I think there was a six week discovery.  We
 8  aren't asking you to do anything about that, but do ask
 9  you to take that into account in setting the briefing
10  deadline.
11      I was going to ask you to treat the FTC's motion as
12  ifs it was set on Friday May the 10th, which is the first
13  date it could have properly been filed, and let our times
14  play out under the local rules.  If that's not acceptable
15  to The Court, today is the 14th, what if we filed
16  something ten days from now by the 24th?
17          THE COURT:  Okay, let me hear from the, uh --
18  any other defendant have a different take on what
19  Mr. Lowrey just said?
20          MR. PEELER:  No, Your Honor, this is Charlie
21  Peeler, and I'm representing the HCA and Palmyra and we
22  agree with what Mr. Lowrey says and the position he has
23  taken.
24          Mr. Voorhis:  This is Lee van Voorhis on behalf
25  of the Phoebe entities, and we agree as well.
```

May 14, 2013

1        THE COURT:  Mr. Perry, let's hear your response

2    in light of what they just reminded The Court.

3        MR. PERRY:  Thank you very much, Your Honor.

4    This is Jeff Perry on behalf of the plaintiff FTC.  As it

5    relates to the preliminary injunction motion, we would not

6    oppose the defendants' proposal that they file their

7    papers ten days from today.  I think that's appropriate

8    and reasonable.

9        There's as separate issue before The Court with

10    regard to the temporary relief, the temporary restraining

11    order motion.  As to that motion, just as Your Honor did

12    back in April of 2011, I don't see any reason that the

13    Court can't decide on the TRO motion today at this

14    telephonic hearing as it did the day after the complaint

15    was filed back in April of 2011.

16        So I would propose that the appropriate thing is to

17    bifurcate this, to have a ruling respectfully from Your

18    Honor today on the TRO, and then ten days from now as

19    defendants propose, they would file their papers on the

20    preliminary injunction and we would proceed from there.

21        THE COURT:  Are you Suggesting that we have, we

22    are capable of now having a TRO hearing on the phone

23    conference?

24        MR. PERRY:  Yes, Your Honor, respectfully.  Just

25    like we did back on April 19, 2011.  As you may recall, we

May 14, 2013

1    are more than two years past that, but that April 19th

2    date is the date the original complaint and TRO and PI

3    were filed in your Court.  There was telephonic status

4    conference held the following day on April 20th and

5    temporary relief.  There was a TRO issued after that

6    hearing; I think the order was entered on April 20th or

7    the following day on April 21st.  Of course that was

8    limited in duration through the pendency of the PI hearing

9    which back in 2011 that was held less than two months

10   after that initial status conference.

11       So the only thing that has changed is the primary

12   defense of the transaction, the state action issue is no

13   longer on the table.

14       So we would propose the same type of process

15   certainly applies today because, of course, The Court

16   already has a substantial body of evidence in front of it.

17   Both from the papers, the amended papers we filed this

18   time around in 2013, on top of the papers, expert report,

19   fact declarations and oral argument that took place in

20   2011.

21       In light of that, and in light of our concerns about

22   ongoing interim harm, and in light of our concerns about

23   ongoing action that may frustrate the ability of the

24   commission to fashion appropriate relief, if it is

25   necessary after the merit proceeding, we would ask that

May 14, 2013

1    temporary relief, the TRO be put in place today, Your

2    Honor.

3            THE COURT:  Hasn't the -- there's been a

4    suggestion from the defendants that they agreed to a

5    status quo pending a preliminary hearing, pending a

6    hearing on the preliminary injunction.

7            MR. LOWREY:  I can speak on that, or if you

8    still want to hear from Mr. Perry on that. I don't mean to

9    interrupt.

10           COURT REPORTER:  Who was that speaking.

11           THE COURT:  That was Mr.  Lowrey.

12           MR. LOWREY:   Excuse me,  Your Honor,  I forget

13   we are talking on the phone.

14           THE COURT:  I was asking for a response from

15   Mr. Perry.  In light of some of the documentation, and I

16   have not looked at it very recently, but I did initially

17   before The Court realized that mandate had not yet been

18   issued in this Circuit.  But my recollection is that the

19   defendants were agreeing there would be a status quo of no

20   further actions taken by them pending The Court's hearing

21   having a full hearing on the preliminary injunction

22   request -- injunctive relief request.

23           MR. PERRY:  Thank you, Your Honor.  This is Jeff

24   Perry on behalf of FTC.  Your recollection is correct to a

25   certain extent.  I think, frankly, we have gotten mixed

May 14, 2013

1   messages or at least my ability to understand the messages

2   is somewhat foggy.  On the one hand, there's been some

3   indication or representation to The Court of a willingness

4   by the defendants to forego some level of action to

5   maintain something approximating the status quo.

6        On the other hand, a couple of things concern us.

7   Number one, there seems to be resistance to having a Court

8   Order to that effect, which we believe is vital and it's

9   unclear to me what the opposition would be to having

10  whatever this standstill agreement is embodied in a Court

11  Order.

12       Number two, the CEO of Phoebe Putney, Mr. Wernick,

13  has been at least reported in the press both in February

14  and in April as saying that or indicating that Phoebe is

15  proceeding with plans, that they have until someone tells

16  them they cannot, that those plans include consolidation

17  of services, tweaking of efficiencies, employment

18  management.

19       I'm quoting from two separate articles that were

20  published in the Albany Herald, first on February 19th of

21  this year, the second on April 10th of this year.

22       The other point I would make is there's been papers

23  filed with This Court, the defendants have indicated that

24  if relief sought by the FTC is somehow overly burdensome

25  or aggressive, which of course we disagree with and I

May 14, 2013

9

 1   would be happy to address, but certainly at a minimum,

 2   highlights that we haven't reached a meeting of the minds

 3   on what the breadth or scope of the relief would be.  So I

 4   wanted to flag that for The Court as well because it is

 5   not as simple as an agreement not to terminate service

 6   lines at the hospital or close the acquired hospital, for

 7   example.

 8         One of the things at issue now that the Supreme Court

 9   has specifically said, this case is not moot and sent it

10   back to This Court.

11         Now that the Eleventh Circuit has noted on the facts

12   alleged, the joint operation of the two hospitals would

13   substantially lessen competition and tend to create, if

14   not create a monopoly.  With those issues on the table and

15   the state action defense stripped away and the ongoing

16   merits trial, as Mr. Lowery noted, is set to start on

17   August 5th.  We have obviously an increased liklihood or

18   possibility that Phoebe may be required to divest of this

19   hospital, Palmyra Hospital, at the end of the proceeding,

20   that's an outcome that has yet to be determined, but has

21   become more likely in light of the stripping away of the

22   state action defense.

23         In light of that, Phoebe's incentives to continue to

24   maintain high levels of quantity and service, to maintain

25   physician privileges, to ensure that the acquired hospital

 1    is adequately funded.  All those are now put in play and

 2    implicated and may need to be addressed in any preliminary

 3    relief.

 4         Our proposed order, as Your Honor saw, includes

 5    provisions to restrain and enjoin defendants from further

 6    consolidation, from selling off assets of the acquired

 7    hospital, from consolidating service lines, from altering

 8    physician privileges, from of course critically raising

 9    the prices that would impact local employers and local

10    patients and indigent patients.

11         So there is, I suspect, although it is certainly not

12    a complicated or lengthy order as the defendant suggests,

13    I suspect what we are seeking from The Court in terms of

14    preliminary and temporary relief is to a certain extent

15    beyond what they have indicated some willingness to

16    consent to.

17              THE COURT:  All right, Mr. Lowrey.

18              MR. LOWREY:  Sure, so Mr. Perry is right that

19    what they want in their nine page order is beyond what we

20    said we would do.

21         What we have said is that, and I think we made these

22    representations as of about April 9th or so when the FTC

23    first filed these papers is, we aren't going to destroy,

24    damage, or sell-off or waste the assets that are in

25    contention or do anything else that fails to preserve

May 14, 2013

 1    them.

 2         The problem, though, and the very critical difference

 3    that this case today as opposed to April 2011 when you

 4    entered the TRO, I believe with the defendants' consent,

 5    is that you had two entirely separately-owned and

 6    separately-licensed hospitals at that point.  Today you

 7    have one licensed hospital in Albany, Georgia.  There is

 8    no Palmyra Development with a separate hospital license.

 9    There's one Phoebe with one license governing operations

10    on both campuses.  And that is, uh, that makes, among

11    other things, that makes the relief the FTC has asked you

12    to enter, very complex and very concerning.

13         And what we'll show you in our preliminary injunction

14    papers, I anticipate, is that if you signed the order they

15    wanted, you would impose an artificial separation on the

16    operation of one licensed hospital in a way that is not

17    permitted by state and federal regulations.

18         And what I mean by that is, I believe we'll show you

19    one licensed hospital with multiple campuses has to be

20    clinically administratively and financially integrated,

21    particularly if you want to treat Medicare or Medicaid

22    patients, which is about 60 to 70% of the patients we

23    treat.

24         I believe we will be able to show you effectively

25    everything in the FTC's order about something like, Don't

1    knock the building down, don't sell off the assets, et

2    cetera, would be inconsistent with the regulations we have

3    to comply with at the hospital.

4        We would also show you the regulations they seek to

5    impose, are in this context, unacceptably vague.  Things

6    like don't diminish the clinical services, don't impair

7    the clinical services.  That might be fine if you are

8    operating two stand-alone hospitals.  But when you are

9    operating one hospital, and you look at those

10   restricitons, people aren't going to know what that means

11   on a day-to-day basis.

12       This is far too complex for you to enter an order

13   over the telephone, uh, to fill in the ten days,  twenty

14   or thirty days, however how long it will take to be set

15   for a hearing.  There's no emergency here.  This

16   transaction closed on in December 2011 when the Eleventh

17   Circuit lifted the stay.

18       The FTC didn't make any effort in any court to stay

19   any acquisition, or any integration, while it petitioned

20   for cert, after cert was granted, or after the Supreme

21   Court ruled in February, or at any time before April 2013,

22   that there's no emergency that would warrant you taking

23   action that, on which you haven't been fully briefed and

24   fully informed over the telephone.

25       I can certainly answer more questions about that and

May 14, 2013

13

 1   go into more detail, but we stand by our representation

 2   that nothing is going to get destroyed, nothing will be

 3   irretrievable or concealed or anything like that.  If the

 4   idea this is going to be reassembled some day and sold

 5   off, we obviously dispute that's what is going to happen

 6   or what could happen, but that's not an arguement you will

 7   need to entertain today.

 8        What else can I tell The Court about this?

 9        THE COURT:  Anybody else?  That's fine, thank

10   you.

11        MR. PERRY:  This is Jeff Perry.  I want to

12   obviously give others a chance to respond or supplement.

13   I want to make one thing clear, I don't want to give The

14   Court the impression our proposed order is designed to

15   pull apart the hospitals or recreate the status quo that

16   was created in 2011.

17        The order is apparent on its face, that the status

18   quo we are seeking to maintain as of now, in other words,

19   to the extent Mr. Lowrey is making the point these

20   hospitals are today integrated and are required to be

21   integrated, we are not proposing altering an integration

22   in any way, but we are proposing that it be maintained in

23   the same way it is now; and that it's current staffing

24   levels, quality levels, and service levels, and prices,

25   critically, which haven't been addressed by Mr. Lowrey,

1    Pre-maintained to where they are today.  We aren't looking

2    to recreate some time period in the past where Mr. Lowrey

3    might have sought a stay or some additional relief. What

4    we are looking for is where we are today and asking this

5    Court to maintain that.

6            THE COURT:  Was someone about to say something?

7            MR. VOORHIS:  I didn't mean to interrupt.  This

8    is Lee Van Voorhis on behalf of the Phoebe entities.

9    Please go ahead.

10           THE COURT:  Here's what I want to day.  The

11   Court briefly looked at the proposed order back when it

12   was initially filed.  There's a lot in it, and some things

13   I have an understanding of and some I do not.  I don't

14   believe that order is -- can be read as being a simple

15   matter of status quo as to whatever it is now.  I don't

16   think it is very clear what it is now.  The defendants of

17   course are asking for things that would interfere with the

18   ability to perform their function as an entity under the

19   law as well as under the pending actions.

20       Here's the simple thing that I see here.

21       The purpose of the TRO is to maintain the status quo,

22   whatever it is.  There are some things to me that sound

23   rather prospective, I don't know, I am not sure, and I

24   don't want to ill-advisedly and uninformed make such a

25   decision.

May 14, 2013

1      What The Court is going to do, The Court is going to

2   enter a TRO to this extent, making it a ruling in the

3   case.  That there are to be no further steps toward

4   consolidating or merging the facilities and they are to be

5   maintained as far as their functions and relationships as

6   they now exist at this time until The Court can have a

7   hearing on the preliminary injunction where The Court

8   believes it needs to heard further so it has a full

9   understanding as to what is being asked for in the

10   interim, beyond what I have ordered, and what is feasible

11   in light of what some of the points have been made to The

12   Court.

13      So The Court clearly means for the status quo, as it

14   now exists, to remain, rather, pending further order of

15   The Court.

16      I know it may be better and ideally to add more

17   detail, but I don't think I can at this point.

18      There have been representations by the defendant that

19   those matters will be maintained as they are, being

20   unsatisfactory to the plaintiffs because it doesn't have

21   the force of a court order, so The Court is making that

22   the force of the Court by ordering that the status quo be

23   maintained.

24      I assume as a part of that, that all records,

25   appropriate personnel, to be identified so that the Court

May 14, 2013

16

 1   can determine at a later time whether any actions have

 2   been taken that are contrary to The Court's instructions.

 3        And the secondary question then is, in light of that,

 4   the Court would expect this to be maintained during the

 5   period of time pending the full hearing and decision by

 6   The Court on the preliminary injunction request.

 7        You all are in the middle of preparations for the

 8   trial of this matter, which I understand is scheduled for

 9   August and things definitely needs to be taken care of

10   early.  I'll be in trials in June, but because of my

11   normal schedule, for some days, I'm free in the afternoons

12   and we can go into the evenings.  So I am prepared to hear

13   it.  But I don't hear this as being a short hearing.  Just

14   from what I am picking up between you all's difference of

15   view about it of what matters are really pending before

16   The Court.

17        I thought you had already been in discussions or may

18   have been earlier today as to what date, what amount of

19   time, first, that might be required; and secondly, when

20   you all think you all could be here for such a hearing in

21   light of your schedule otherwise.

22        MR. PERRY:  Your Honor, this is Jeff Perry on

23   behalf of FTC.  One final question.  I take your point and

24   respect and appreciate The Court's Judgment on the TRO.

25   The only thing I would ask for clarification or request

May 14, 2013

1    from The Court, is if The Court would consider as part of

2    the TRO also ordering that the defendants will not raise

3    pricing or renegotiate health plan contracts during the

4    period the TRO was in force.  I wants sure whether The

5    Court would be inclined to include that as part of the TRO

6    order.

7         THE COURT:  Let me hear from the other side

8    first, before I speak on that.

9         MR. LOWREY:  Your Honor, that's part of the

10   problem.  I take it at your word that maintaining the

11   status quo means to continue doing whatever we are doing

12   today.

13        THE COURT:  Yes.

14        MR. LOWREY:  Even then, I have some grave

15   concerns as a practical matter we'll know what that means

16   in every practical instance.  For example, there's one set

17   of reimbursement contracts enforced for all patients

18   treated anywhere at a PPMH facility.  There's not a

19   separate set of contracts for one campus or the other, and

20   federal and state laws doesn't allow you to do that.  You

21   have to be completely and financially integrated if you

22   want to treat Medicaid patients, for example, and be in

23   compliance with the law.

24        What Mr. Perry is suggesting is that's a change from

25   the status quo not a maintenance of the status quo.  That

May 14, 2013

 1   will be an undesirable one for the reasons we will

 2   elaborate on in our brief.

 3        MR. PERRY:  This is Jeff Perry.  That was not

 4   what I was seeking at all.  I apologize if I was unclear.

 5   We aren't looking to recreate separate contracts.   What I

 6   was requesting The Court to consider, that however the

 7   contract exists as of today as Mr. Lowrey described them,

 8   that they would not be recreated or changed from this

 9   point forward, and the price not be increased.

10        We are not asking or seeking the Court's order during

11   the TRO phase to recreate contracts or status quo that

12   existed in the past.

13        MR. VOORHIS:  This is Lee Van Voorhis from

14   Phoebe Putney.  I think what Mr. Perry is asking is still

15   going to end up being unclear in practice, because there

16   are elements of behavior and negotiation going forward.

17   What does he propose, for example, for new contracts and

18   new deals going forward that may be very beneficial or be

19   necessary for patient coverage.

20        I understand that it is one thing to say contract in

21   place, even if it happens to be expiring in the near term

22   and you can't renegotiate, that's challenged, but at least

23   there is a contract to look at.  If there's something that

24   has to be said about new a contract.

25        THE COURT:  What about this, then, I would grant

1    the request that there would be no changes or increases in

2    contracts existing, but not attributed to entirely new

3    contracts that may occur during the time this is pending.

4            MR. LOWREY: I apologize, you broke up on my end

5    of the line.

6            THE COURT:  What I am saying is the concern

7    seems to be not so much with the existing contracts, but

8    those that might occur, or come into being during the

9    pendency of the TRO.  I am saying just to exclude those

10   from the inclusion in the TRO.  So that would clarify that

11   issue.

12           MR. PERRY:  This is Jeff Perry, that's certainly

13   acceptable to us, Your Honor.

14           MR. LOWREY: Unless the record be unclear, Your

15   Honor, respectfully none of this is anything we can

16   consent or agree to.  I just want the record to be clear

17   on that.

18           THE COURT:  I think as far as the status quo, I

19   see some concern there that if it could be circumvented by

20   renegotiating at this time while it is pending, that would

21   upset the status quo as The Court sees it, and I think

22   that's a reasonable request for those existing contracts;

23   and The Court would exclude from those that would be

24   entirely new contracts, I guess new patients or new

25   parties.

May 14, 2013

1    And I understand that's over objection, but The Court

2    thinks that's the best way to get some closure to this

3    step so we can get to the next step.

4    Anybody else have any concern?

5    MR. PERRY:  This is Jeff Perry.  You raised the

6    next step about the scope and nature and timing of the PI

7    hearing itself.  The last time, it was several hours and

8    the last time it involved not only discussion of merits

9    and also a lengthy discussion of the state action issue

10   that no longer exists.  I think we would be prepared.  We

11   would want equal time and make sure whatever The Court

12   wants to hear from us on, we will be prepared to respond

13   to; to and in addition, of course, to the oral arguments,

14   our proposal would be that the discovery which Mr. Lowrey

15   described as currently as being ongoing, and in the merits

16   proceeding, that that would be available and of course

17   could be incorporated into briefing to Your Honor.  That

18   you would have the ability to review expert reports to the

19   extent they exist from the merits proceeding which is in

20   progress, that deposition testimony could be incorporated

21   into briefing and that oral argument be available to Your

22   Honor to be able to answer questions and present and

23   summarize all of that evidence which is, of course, the

24   preconsumation evidence from 2011 and prior, and the

25   additional evidence that's been drawn out through

May 14, 2013

1    discovery and the merits proceeding.

2        I think between the briefing and reports and fact

3    declarations, that each side would have the opportunity to

4    present to The Court, that with one to two hours per side,

5    that that would be more than sufficient to present the

6    issues.

7        Here in light of the nature of the proceeding which

8    is not to ultimately judge the merits of the transaction

9    but within the context of the FTC Section 13B standard

10   which is to determine the likelihood of success only

11   whether the FTC has raised questions going to the merits

12   that are so serious and so difficult and doubtful as to

13   make them fair ground for thorough investigation, study,

14   deliberation and determination by the FTC in the first

15   instance and ultimately by The Court of Appeals.

16       I only go on about the standard because it sets the

17   context for how much evidence and how much of a hearing

18   this Court needs to have as we are -- as Mr. Lowrey

19   pointed out -- at an aggressive pace preparing for the

20   full merits trial, which will begin in about

21   two-and-one-half months where there will be 210 hours of

22   live testimony, fact witnesses, expert witnesses, and

23   obviously as there is ongoing, I think, voluminous

24   discovery.

25       In light of all of that and with gratitude for

May 14, 2013

22

 1    indulging my long-windedness, I would propose one hour per

 2    side would be more than sufficient to summarize the

 3    evidence for each side.

 4           THE COURT:  Mr. Lowrey.

 5           MR. LOWREY:  I wanted to make some comment that

 6    was along the line of it is hard to believe this is only

 7    going to last one or two hours.

 8           THE COURT:  You remember I have been there

 9    before, guys.

10           MR. LOWREY: I mean that in total levity.  I

11    think we are looking at more like a full day.  I

12    understand you might not be able to do it on a full day.

13           THE COURT:  I think it will take a full day.

14    Here is what I am going to suggest.  I'll give each side

15    three hours each.

16           MR. VOORHIS:  With all due respect, this is Lee

17    Van Voorhis with Phoebe Putney.  I would like to second

18    what Frank said and point out that Mr. Perry, albeit's

19    long winded recitation, did forget the second half of the

20    test, which, of course, is balancing of the equities.  I

21    think there may well be a *upium(sic)* out of that that has

22    to be done here, and there may be far more to bring before

23    this court than what has been outlined so far.  I would

24    respectfully like to suggest that we would have at least

25    the full day, as Mr. Lowrey has suggested.

May 14, 2013

23

1              THE COURT:  What I am getting at is I am saying

2       three hours for any evidence that needs to be presented

3       and reviewed with The Court, and of course, additional

4       time with the argument.

5           Looking at my calendar, the date that looks good to

6       me, and I think I'll go ahead and set it for **June the**

7       **14th, that's on a Friday.  June 14th, 2013.**  And we'll

8       start at 8:30 a.m. and we'll go as long as we need to go.

9       But The Court has a suggestion and expects that you all

10      try to comport your evidence, presentation to three hours

11      per side.

12             MR. LOWREY:  Did you say 8:30, Your Honor?

13             THE COURT:  Yes.

14             MR. LOWREY:  Do you we need to confirm off-line

15      about availability?

16             THE COURT:  You can but this is part of the

17      issue, we have got two matters going on.  And I understand

18      what is going on with the administrative hearing that's

19      being set for August; but This Court is on an even shorter

20      timeline.

21             MR. LOWREY:  I think a better answer would be

22      we'll take that date, Your Honor.

23             THE COURT:  Because I have got -- and that's

24      during a trial period.  I'm hoping to get those things

25      cleared so I can live by that date for you.  Anything

May 14, 2013

1    else?

2        Oh, yes.

3        MR. LOWREY:  As Mr. Perry says, this is a

4    developing record that's developing in real-time, so maybe

5    we'll make some further submission to you still

6    comfortably in advance of that June hearing but after May

7    the 4th.  Candidly, Your Honor, if it is going to be June

8    14th, can you get more breathing room on that 24th date

9    now that you have put down the TRO?

10       THE COURT:  I need some reading room, right.

11       MR. LOWREY:  What if we pushed that to the 31st,

12   which would still give you two weeks before the hearing to

13   read?

14       THE COURT:  That's reasonable.  I'll go along

15   with that.  In light of The Court entering a TRO pending

16   the hearing, that's not bad, I can accept that for the

17   21st.

18       MR. LOWREY:  Thank you, Your Honor.  If we get

19   it done earlier, maybe we can so you can consider that.

20   We'll see.

21       THE COURT:  Anything else?

22       MR. PERRY:  Your Honor, this is Jeff Perry.

23   Would be it useful, productive for Your Honor to have

24   reply briefs from plaintiff, something brief?

25       THE COURT:  Those are always helpful in these

May 14, 2013

1    matters.  Yes, that would be appreciated.

2              MR. PERRY:  Should we submit that if the

3    defendants are anticipating filing their opposition on the

4    31st, perhaps by the 7th we would have a reply in.

5              THE COURT:  That will be good.  That will be

6    fine.

7         All right.  I would expect you all to confer further,

8    if you all find, for some reason that you are aware of,

9    there are some matters you are aware of that I am not,

10   that will affect that date or affect the timeline as The

11   Court has adopted, let me know as soon as you can so we

12   can make other adjustments if we have to.

13             MR. LOWREY:  As a piece of housekeeping, we

14   moved The Court to submit one 40 page brief instead of two

15   20-pagers.

16             THE COURT:  That's fine.

17             MR. LOWREY:  It would help for planning

18   purposes.

19             THE COURT:  That will be fine, you may do so.

20   That's granted.

21             MR. PERRY:  This is Jeff Perry.  Just before we

22   hang up, can I have clarity on the 14th?  I understand

23   obviously three hours per side.  Is The Court envisioning

24   the plaintiffs would go first and we would have some

25   opportunity to reserve part of our three hours of our time

May 14, 2013

1     for rebuttal?

2               THE COURT:  Yes, you can split that up however

3     you wish.  That's ideally what The Court is suggesting,

4     that you work towards managing it to be within three

5     hours.  Obviously, there may be some things that may not

6     fit that and I understand that.

7               MR. PERRY:  Thank you.  Understood.

8               THE COURT:  I'll be hearing from you on the 31st

9     at 7, and see you on the 14th.

10              MR. LOWREY:  We hope it will be nice and cool

11    down there.

12              THE COURT:  It is right now, but I don't know

13    that it will be then.  Thank you.

14         (Recess)

15                    CERTIFICATE OF REPORTER

16

17

18    I hereby certify that the foregoing is a true and correct

19    transcript of the proceedings.

20
           /s_____
21    R. Darlene Pino                    Date: May 15, 2012
           United States Court Reporter
22    Middle District of Georgia
           Albany Division
23    201 West Broad Avenue
           CB King Federal Courthouse
24    Albany, Georgia 31701
           Phone:  229-878-0111
25    Rdpino@cybercove.com