IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

FEDERAL TRADE COMMISSION, )
)
    Plaintiff, )
)
    v. )
) CIVIL ACTION
) FILE NO. 1-11-CV-00058-WLS
PHOEBE PUTNEY HEALTH )
SYSTEM, INC., PHOEBE PUTNEY )
MEMORIAL HOSPITAL, INC., )
PHOEBE NORTH, INC., HCA, INC., ) Filed at___ 8:00 ___A ___M
PALMYRA PARK HOSPITAL, ) _____6/5_____, 20_13_
INC. and HOSPITAL AUTHORITY ) _____BCL_____
OF ALBANY-DOUGHERTY ) Deputy Clerk, U.S. District Court
COUNTY, ) Middle District of Georgia
)
    Defendants. )

## [PROPOSED] STIPULATED PRELIMINARY INJUNCTION ORDER

Plaintiff, the Federal Trade Commission (the "Commission" or "FTC"), by its designated

attorneys, having filed an Amended Complaint for Temporary Restraining Order and Preliminary

Injunction, pursuant to Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15

U.S.C. § 53(b), and Section 16 of the Clayton Act, 15 U.S.C. § 26 (2006), and

Whereas, the Court has entered on May 15, 2013 a Temporary Restraining Order

("TRO"), and

Whereas, Defendants have operated under the TRO since May 15, 2013, and have agreed

with Plaintiff to continue to operate in accordance with that TRO, which includes, and is not

limited to, what is more fully described below in this Order, it is hereby

**ORDERED, ADJUDGED AND DECREED** as follows:

1.      This Court has jurisdiction over the subject matter of this case and jurisdiction

over the parties.

1097390.1

2.      Venue and service of process are proper.

3.      The Court approves and enters the order as stipulated by the parties.

**I.**

**ASSET MAINTENANCE**[1]

**IT IS ORDERED** that for the duration of this Order,

A.      Defendants are hereby restrained and enjoined from:

    1.      further consolidating, integrating, or otherwise combining the former Palmyra Park Hospital, Inc., now "Phoebe North," into Defendants' hospital system;

    2.      transferring, except on a temporary basis as needed by Defendants for medical reasons, or selling of any assets of Phoebe North;

    3.      causing or permitting the destruction, removal, wasting, or deterioration, or otherwise impairing the viability or marketability of Phoebe North, except for ordinary wear and tear;

    4.      eliminating, transferring or consolidating any clinical service or department that is offered at Phoebe North, or otherwise changing the *Status Quo* at Phoebe North; unless required by circumstances not reasonably within the control of Defendants to protect patient safety or comply with state or federal law governing the operation of hospitals providing Medicare and Medicaid services;

    5.      modifying, changing, or canceling any physician privileges other than at the request of the physician, which request shall not be initiated,

---

[1] The definitions for the terms used herein are found in Appendix A, attached hereto.

1097390.1

suggested, or otherwise influenced by Defendants, *PROVIDED, HOWEVER*, that Defendants may revoke the privileges of any individual physician consistent with the practices and procedures currently in effect at Phoebe Putney Memorial Hospital;

6.     terminating employees or reducing employee compensation levels currently in effect for employees working at Phoebe North, *PROVIDED, HOWEVER*, that Defendants may manage the staffing of their workforce consistent with the practices and procedures currently in effect at Phoebe Putney Memorial Hospital; and

7.     making any price changes to, or terminating, or causing or allowing termination of any contract between any Health Plan and Defendants that includes Phoebe North.  For any contract between a Health Plan and Defendants that includes Phoebe North which expires during the term of this Order, Defendants shall offer to continue to accept the same terms of the contract for the remaining term of this Order.  *PROVIDED, HOWEVER,* that Defendants may change or set prices on newly entered Health Plan contracts that are not in existence as of the date of this Order.

B.     Defendants shall:

1.     provide sufficient funding, working capital, personnel, and administrative and professional services needed to maintain the *Status Quo* at Phoebe North.

2.     maintain the viability and marketability of Phoebe North.

1097390.1

C.      The terms of this Order are intended to more fully describe the obligations of the Defendant to continue to operate PPMH and Phoebe North in the manner in which they operated on May 15, 2013.

## II.

## DURATION OF ORDER

**IT IS FURTHER ORDERED** that this Order shall remain in effect until either (1) the latter of (i) the date the Commission issues its order upon completion of the Commission's administrative proceeding or (ii) entry of the final appellate order if an appeal is taken from the Commission's order; or (2) such time as further ordered by the Court, upon the request of either party.

## III.

## JURISDICTION

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter for all purposes and for the full duration of this Order.

**SO ORDERED**, this 4th day of June , 2013.

The Honorable W. Louis Sands
United States District Court Judge

## APPENDIX A

The following definitions shall apply to this Order:

A.      "Acute Care Hospital" means a health-care facility licensed as a hospital, other than a federally-owned facility, having a duly organized governing body with overall administrative and professional responsibility, and an organized professional staff, that provides 24-hour inpatient care, that may also provide outpatient services, and having as a primary function the provision of General Acute Care Inpatient Hospital Services.

B.      "Defendants" means Phoebe Putney Health System, Inc. ("PPHS"), Phoebe Putney Memorial Hospital, Inc. ("PPMH") (collectively, "Phoebe Putney"); HCA Inc. ("HCA"); and the Hospital Authority of Albany Dougherty County (the "Authority"), including, but not limited to, their respective parents, directors, officers, employees, agents, attorneys, and representatives; its joint ventures, subsidiaries, divisions, groups, and affiliates controlled by, and the respective directors, officers, employees, partners, agents, attorneys, and representatives of each.

C.      "General Acute Care Inpatient Hospital Services" means a broad cluster of basic medical and surgical diagnostic and treatment services for the medical diagnosis, treatment, and care of physically injured or sick persons with short-term or episodic health problems or infirmities, that include an overnight stay in the hospital by the patient.  General Acute Care Inpatient Hospital Services include what are commonly classified in the industry as primary, secondary, and tertiary services, but exclude:  (i) services at hospitals that serve solely military and veterans; (ii) services at outpatient facilities that provide outpatient services only; (iii) those specialized services known in the industry as quaternary services; and (iv) psychiatric, substance abuse, and rehabilitation services.

1097390.1

D.      "Health Plan" means any Person that pays, or arranges for payment, for all or any part of any General Acute Care Inpatient Hospital Services for itself or for any other Person. Health Plan includes any Person that develops, leases, or sells access to Acute Care Hospitals.

E.      "Person" means any natural person, corporation, partnership, association, governmental organization, or other legal entity, including all officers, members, predecessors, assigns, divisions, affiliates and subsidiaries.

F.      "Phoebe North" means the facility located at 2000 Palmyra Road, Albany, Georgia 31701, formerly Palmyra Park Hospital, Inc., owned and operated prior to the Transaction by HCA, its parents, directors, officers, employees, agents, attorneys, and representatives; its joint ventures, subsidiaries, divisions, groups, and affiliates controlled by, and the respective directors, officers, employees, partners, agents, attorneys, and representatives of each.  Phoebe North also means all activities relating to the provision of General Acute Care Inpatient Hospital Services and other related health-care services conducted by as of May 15, 2013, including, but not limited to, all health-care services, including outpatient services, offered at Phoebe North.

G.      "*Status Quo*" refers to the state of Phoebe North as of May 15, 2013.

H.      "Transaction" refers to the transaction whereby the Authority purchased Palmyra's assets from HCA on December 15, 2011, and then leased Palmyra to Phoebe Putney.

2