**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION**

| | | |
|---|---|---|
| FEDERAL TRADE COMMISSION | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| v. | ) | FILE NO. 1:11-cv-00058 (WLS) |
| | ) | |
| PHOEBE PUTNEY | ) | |
| HEALTH SYSTEM, INC., | ) | |
| PHOEBE PUTNEY MEMORIAL | ) | |
| HOSPITAL, INC., | ) | |
| PHOEBE NORTH, INC., | ) | |
| HCA INC., | ) | |
| PALMYRA PARK HOSPITAL INC., and | ) | |
| HOSPITAL AUTHORITY OF ALBANY- | ) | |
| DOUGHERTY COUNTY, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S UNOPPOSED MOTION TO EXTEND DEADLINE FOR FILING OF MOTION TO DISMISS

Plaintiff Federal Trade Commission (the "FTC" or "Commission") respectfully moves the Court to extend the deadline for the filing of the necessary dismissal documents pertaining to the Court's stipulated Order for a Preliminary Injunction from June 13, 2014, to July 14, 2014. Plaintiff has consulted with Defendants' counsel and Defendants' counsel do not oppose this motion.

On June 3, 2014, the Georgia Department of Community Health ("DCH") issued a determination letter in response to North Albany Medical Center, LLC's ("NAMC") request regarding whether a certificate of need ("CON") would be required for NAMC to purchase or to

1

lease Phoebe North (formerly, Palmyra Park Hospital) pursuant to a divestiture order.  In its determination letter, DCH concluded that "returning Phoebe North to its status as a separately licensed . . . hospital for divestiture would not require prior CON review and approval; provided the decoupling is within the scope and location of the hospital's previously grandfathered and CON authorized beds and services and any capital costs are below the threshold."[1]  DCH also concluded that the acquisition of Phoebe North from the Hospital Authority would only be subject to review under the general considerations, not the service specific rules.[2]  Finally, DCH concluded that "the lease of Phoebe North by the Authority to NAMC would not be subject to prior CON review and approval."[3]

Plaintiff seeks this extension because the Commission must consider, in light of the DCH determination, whether to make final the proposed consent agreement that settles the underlying administrative proceedings or take other action.

For the reasons stated, Plaintiff respectfully requests that this extension of the time to file be granted.

Respectfully submitted this 12th day of June, 2014.

---

[1] Exhibit A, Letter from M. Jarrard to G. Alexander, dated  June 3, 2014, at 4.
[2] *See id.*
[3] *Id.* at 5.

  s/Alexis J. Gilman
ALEXIS J. GILMAN
Deputy Assistant Director
MARIA M. DIMOSCATO
CHRISTOPHER J. ABBOTT
LUCAS A. BALLET
AMANDA G. LEWIS
JENNIFER K. SCHWAB (630660)
MARK SEIDMAN
JOSHUA B. SMITH
STELIOS S. XENAKIS
Attorneys
Federal Trade Commission
Bureau of Competition
600 Pennsylvania Avenue, NW
Washington, DC  20580
Telephone: (202) 326-2579
Facsimile: (202) 326-2655
Email: agilman@ftc.gov

DEBORAH L. FEINSTEIN
Director
NORMAN A. ARMSTRONG, JR.
Deputy Director
Federal Trade Commission
Bureau of Competition

DAVID C. SHONKA
Principal Deputy General Counsel
Federal Trade Commission

*Counsel for Plaintiff Federal Trade
Commission*

3

# EXHIBIT A



**GEORGIA DEPARTMENT
OF COMMUNITY HEALTH**

Nathan Deal, Governor                                                    Clyde L. Reese III, Esq., Commissioner

2 Peachtree Street, NW  |  Atlanta, GA 30303-3159  |  404-656-4507  |  www.dch.georgia.gov

June 3, 2014

Mr. G. Edward Alexander
President and Chief Executive Officer
North Albany Medical Center, LLC
201 Seaboard Lane; Suite 100
Franklin, Tennessee 37067

> **Re:    DET2014-033—Request for Letter of Determination Regarding Facility Divestiture – North Albany Medical Center, LLC – Albany, Dougherty County, Georgia**

Dear Mr. Alexander:

The Georgia Department of Community Health (the "Department") is in receipt of your request regarding the reviewability of a proposed purchase or lease of the hospital formerly operated by Palmyra Park Hospital, Inc. ("Palmyra") pursuant to divestiture. The Department received the request on March 12, 2014 and docketed the request as DET2014-033. Thank you for the information provided and for your efforts to comply with the State's Certificate of Need ("CON") laws.

It is the understanding of the Department that the Hospital Authority of Albany-Dougherty County ("Authority") acquired Palmyra's assets, including its grandfather and CON authorizations. The former Palmyra hospital was renamed Phoebe North. The Authority leased Phoebe North, a 248-bed hospital located at 2000 Palmyra Road, Albany, Dougherty County, Georgia, to Phoebe Putney Memorial Hospital, Inc. ("PPMH"). PPMH is a wholly owned subsidiary of Phoebe Putney Health System, Inc. ("PPHS"). The operations of Phoebe North were later combined with PPMH resulting in a single hospital license. PPMH did not seek a new CON to combine the licenses of PPMH and Phoebe North but relied on the existing grandfather and CON authorizations for the beds and services of the two hospitals. See DET2012-096.

North Albany Medical Center, LLC ("NAMC") proposes to purchase or lease Phoebe North in the event divestiture is required or agreed upon as a remedy in the pending anti-trust litigation filed by the Federal Trade Commission ("FTC") with respect to the Palmyra transaction. NAMC is requesting a determination regarding the application of the CON laws to its proposed purchase or lease pursuant to divestiture.

Health Information Technology  |  Healthcare Facility Regulation  |  Medical Assistance Plans  |  State Health Benefit Plan

Equal Opportunity Employer

Mr. G. Edward Alexander
June 3, 2014
P a g e | 2

The FTC filed letters of interest dated March 31, 2014 and May 20, 2014, regarding NAMC's request.  By way of background, on April 19, 2011, FTC staff filed an administrative complaint challenging the legality of the acquisition of Palmyra by the Authority and the related Phoebe entities.  In the event the transaction was consummated, the Complaint requested divestiture as a potential remedy.  See DET2014-033 Request, Ex. A, at 19.  The FTC stayed the administrative action pending appeals related to the application of the state immunity doctrine.  The FTC noted that, on February 19, 2013, the U.S. Supreme Court unanimously held that state-action immunity did not apply to exempt the Palmyra transaction from the anti-trust laws, and remanded the case for further proceedings.[1]  Letter from Deborah L. Feinstein, Director, Bureau of Competition, FTC, to Roxana Tatman, Legal Director of Health Planning, DCH (March 31, 2014) (DCH file, DET2014-033).

In light of the Supreme Court's decision, the FTC, on March 14, 2013, lifted its stay on the administrative litigation challenging the acquisition of Palmyra.  On June 5, 2013, the district court entered a Stipulated Preliminary Injunction against further consolidation of the two hospitals.  On August 22, 2013, the FTC and the parties entered into a proposed settlement of this litigation which did not require divestiture.  At the time, it was the FTC's understanding that "Georgia's CON [Certificate of Need] statutes and regulations effectively prevent the Commission from effectuating a divestiture of either hospital in this case."  Feinstein Letter dated March 31, 2014.  The FTC is now considering whether to accept the proposed settlement of the litigation and file dismissal documents related to the Preliminary Injunction referenced above.  The FTC also filed a motion to extend the time for dismissal in federal district court stating that the "Commission's consideration of this settlement may be informed by DCH's response to NAMC's request [for determination]."  NAMC's response letter dated April 16, 2014. Ex. 2, at 2.  The Authority, PPMH and PPHS did not oppose the motion and the Court granted the FTC's extension request.

The Authority, PPMH and PPHS filed a letter of opposition contending that NAMC's determination request violates DCH Rule 111-2-2-.10(2)(a) regarding actual or proposed actions or conduct by a third party.  The opposition also submits that the request is premature as there are numerous factors which play into a possible divestiture of the former Palmyra assets and any sale or lease related to divestiture.  The opposition filed supplemental information reiterating their position that the Department should not address the substantive issues raised in the request.

In response to opposition, NAMC asserts that the FTC's proposed settlement relies on an erroneous interpretation of the CON laws that would effectively prevent divestiture.  NAMC also submits the applicability and interpretation of the CON laws may directly affect or impact its proposed course of action to acquire by sale or lease Palmyra (Phoebe North) in the event of divestiture.  NAMC further states that if CON is a barrier to divestiture, it will be required to seek another course of action to operate a hospital in the Albany area.  NAMC contends that simply because the opposition may be forced to sell or lease the hospital, rather than voluntarily agreeing to divest by sale or lease, does not change the fact that the CON laws may directly affect or impact its

---

[1]  In DET2012-096, the Department stated that the determination regarding combined licensure of Phoebe North and PPMH did not address compliance with any other state or federal regulatory requirements.  The Department also noted that the determination was based on the requirement that PPMH satisfy any other applicable regulatory provisions.

Mr. G. Edward Alexander
June 3, 2014
P a g e | 3

proposed course of conduct.  NAMC further submits that the request is not premature.  NAMC notes that a determination does not set time limits for a proposed course of conduct.

> DCH Rule 111-2-2-.10(2) provides:
>
> Pursuant to O.C.G.A. § 31-6-47(c), if a person believes or has reason to believe that the application of a Department Rule or statutory provision may directly affect or impair the legal rights of that person as to some proposed action or course of conduct being considered by that person, including, but not limited to, determinations regarding reviewability, grandfathering decisions, and relocation or replacement determinations, such person may request a written determination from the Department regarding the application of such Department rule or statutory provision upon that person's proposed action or course of conduct. A determination request is distinguished from a general question as a determination does not address general issues relating to policy and procedure.

DCH Rule 111-2-2-.10(2).

DCH Rule 111-2-2-.10(2) does not set a time limit for a proposed course of conduct being considered by a person in a determination request.  Furthermore, if the proposed anti-trust settlement is approved as the result of a misunderstanding regarding the applicable CON laws, NAMC's right to pursue the purchase or lease of Phoebe North, based on an anti-trust related divestiture, would be impacted.  DCH Rule 111-2-2-.10(2)(a)  provides that a person may not request a determination related to "an actual or proposed action or course of conduct which has been or will be taken by a third party."  Id.  The Rule does not preclude a person from seeking a determination regarding the requesting person's proposed course of action or conduct under consideration.  NAMC simply requests a determination regarding the applicable CON laws with respect to its proposed purchase or lease of Phoebe North in the event of divestiture.

The Department determines that the application of the CON laws may directly affect or impact NAMC's proposed action or course of conduct within the meaning of DCH Rule 111-2-2-.10(2).  Accordingly, a substantive response to NAMC's request is appropriate under the applicable CON rules and statutory provisions.  The Department's response addresses only the CON issues raised regarding NAMC's proposed purchase or lease of Phoebe North in the event of divestiture.  This determination does not address the licensure requirements related to separate licensure for divestiture or the applicable anti-trust laws.  Hospital licensure is under the jurisdiction of the Healthcare Facility Regulation Division, Licensure Section, not the Health Planning Section.

NAMC requests a determination regarding the following divestiture related matters: 1) the CON consequences in the event Phoebe North is licensed as a separate hospital for purposes of divestiture, by sale or lease, to NAMC; 2) the CON consequences in the event NAMC purchases Phoebe North from PPMH; and 3) the CON consequences in the event NAMC leases Phoebe North from the Authority.

Mr. G. Edward Alexander
June 3, 2014
P a g e | 4

First, when PPMH included Phoebe North's beds and services on its hospital license, it did not relinquish or invalidate the grandfather and CON authorizations for the beds and services of Phoebe North. PPMH did not seek a new CON for a consolidated hospital inpatient site. Rather, the combined license was simply a paper function of licensure. The coupling (and subsequent decoupling) of grandfathered and CON authorized hospitals for purposes of licensure is not CON reviewable in and of itself. Please be advised that returning Phoebe North to its status as a separately licensed 248-bed hospital for divestiture would not require prior CON review and approval; provided the decoupling is within the scope and location of the hospital's previously grandfathered and CON authorized beds and services and any capital costs are below the threshold.[2] As noted above, this determination does not address the licensure requirements for separate licensure of the two hospitals or the anti-trust laws related to divestiture.

Second, in the event separate licensure is obtained for divestiture, Phoebe North would be considered an existing health care facility under the CON laws. O.C.G.A. § 31-6-47(a)(9) exempts:

Expenditures for the acquisition of existing health care facilities by stock or asset purchase, merger, consolidation, or other lawful means unless the facilities are owned or operated by or on behalf of a:

(A)  Political subdivision of this state;

(B)  Combination of such political subdivisions; or

(C)  Hospital authority, as defined in Article 4 of Chapter 7 of this title.

O.C.G.A. § 31-6-47(a)(9); see also DCH Rule 111-2-2-.03(10).

A reviewable acquisition of an existing healthcare facility from a hospital authority would be subject to review under the general considerations, not the service specific rules. However, in this instance, NAMC proposes acquiring Phoebe North by divestiture from PPMH, not the Authority. In DET2008-111, the Department determined that hospitals operated by an Internal Revenue Service § 501(c)(3) not-for-profit entity are not considered to be a facility owned by or operated on behalf of a defined Georgia hospital authority. See O.C.G.A. § 31-7-70 et seq. PPMH is an Internal Revenue Service § 501(c)(3) not-for-profit entity which operates and controls Phoebe North and Phoebe Putney Memorial Health Hospital as part of a corporate restructuring. Please be advised the proposed acquisition by NAMC of Phoebe North from PPMH pursuant to divestiture would not be subject to prior CON review and approval. The acquisition fits within the parameters of O.C.G.A. §31-6-47(a)(9).

Finally, it is the understanding of the Department that divestiture could involve a change in the lease arrangement and the lessee of Phoebe North. In the event separate licensure is obtained, the Authority could lease Phoebe North to NAMC. O.C.G.A. § 31-6-47(a)(9.1) states that:

---

[2]  Pursuant to DET2012-096, any beds and services, moved as a result of the merger, may be returned to the original campus prior to decoupling for divestiture.

Mr. G. Edward Alexander
June 3, 2014
P a g e | 5

> (9.1) Expenditures for the restructuring of or for the acquisition by stock or asset purchase, merger, consolidation, or other lawful means of an existing health care facility which is owned or operated by or on behalf of any entity described in subparagraph (A), (B), or (C) of paragraph (9) of this subsection only if such restructuring or acquisition is made by any entity described in subparagraph (A), (B), or (C) of paragraph (9) of this subsection.

O.C.G.A. § 31-6-47(a)(9.1); see also Rule 111-2-2-.03(11).

The Authority's lease to NAMC would be considered a restructuring of the Authority for CON purposes. The restructuring would be made by a hospital authority within the meaning of O.C.G.A. § 31-6-47(a)(9.1). Please be advised that the lease of Phoebe North by the Authority to NAMC would not be subject to prior CON review and approval.

Please note that this determination is issued based on the unique facts and circumstances of NAMC's request. If Phoebe North does not obtain a separate hospital license for divestiture in accord with the licensure regulations or if any other facts or circumstances material to this determination change, this determination would not apply. The Department reserves the right to analyze each situation presented on its own merits at any particular time.

I hope this reply is responsive to your request. Please feel free to contact me if you have any further questions or concerns.

Sincerely,

Matthew Jarrard
Deputy Division Chief/Health Planning Director
Healthcare Facility Regulation Division
Georgia Department of Community Health

cc:     John H. Parker, Esq.
        Armando L. Basarrate, Esq.
        Victor L. Moldovan, Esq.
        Marsha A. Hopkins, Esq.
        Roxana D. Tatman, Esq.
        DET File